639 A.2d 9

COMMONWEALTH of Pennsylvania, Appellee,

v.

David CHMIEL, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 22, 1992.

Decided March 4, 1994.

246

Paul Philip Ackourey, Scranton, for appellant; William S. Houser, Scranton, on the brief.

Michael Barrasse, Dist. Atty., Amil M. Minora, Scranton, Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

Appellant David Chmiel was convicted of three counts of murder in the first degree, three counts of robbery, one count of burglary, and two counts of theft by unlawful taking. The jury at the sentencing hearing determined that Appellant

should be sentenced to death. Post-trial motions were filed. Appellant then filed a *pro se* Post Conviction Hearing Act (PCHA) petition alleging ineffective assistance of counsel. The trial court appointed new counsel and stayed the post-trial motions. Following an evidentiary hearing, the trial court dismissed the PCHA petition. Post-trial motions were argued and denied. Appellant was then formally sentenced to death for each of the murder convictions. Direct appeal from the judgment of sentence was taken to this Court pursuant to 42 Pa.C.S. § 9711(h).

 In each case in which the death penalty is imposed, this Court is required to conduct an independent review of the sufficiency of the evidence, even where the defendant has not challenged the conviction on that ground. *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986); *Commonwealth v. Syre,* 507 Pa. 299, 489 A.2d 1340 (1985), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987). This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977); *Commonwealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976).

 On September 21, 1983, at approximately 1:30 a.m., Angelina, Victor and James Lunario were murdered in their home located in Throop, Lackawanna County. All three vic-

tims had been stabbed repeatedly. Angelina was found sitting upright on the sofa in the living room, while James was found in his hospital bed also in the living room. Victor Lunario was found in his bedroom on the second floor of the house in Throop. Victor's and Angelina's bedrooms had been ransacked. On the floor in Victor's bedroom was a lock box which had been broken open. The lock box was surrounded on the floor with empty brown government envelopes with dollar amounts written on them totalling $4,256.25. Down the hall from Victor's bedroom, Angelina's bedroom had papers, shoe boxes, and jewelry strewn on the floor. In her bedroom closet was found a brown sweater sleeve which had been fashioned into a homemade ski mask.

The state police concentrated their investigation upon the brown sweater sleeve ski mask. Eventually, the police obtained a photograph of Martin Chmiel, Appellant's brother, who was wearing a sweater that looked similar to the brown sweater sleeve ski mask. Although Martin Chmiel had on a prior occasion denied any knowledge of the crimes, the state police once again questioned Martin and when the police confronted him with the photograph and the mask, Martin broke down and told the state police the same facts that he later testified to at trial, which was the Commonwealth's principal evidence in this case.[1]

Martin Chmiel related that in late August or early September, 1983, he and Appellant had a conversation in Appellant's automobile during which Appellant told Martin that Appellant needed "fast money." Martin told Appellant that there was money in the Lunario home in Throop, Pennsylvania. Appellant and Martin then made plans to rob the house in Throop. The brothers plotted to use masks during the robbery. Mar-

1. Martin Chmiel had previously pled guilty to criminal conspiracy to commit arson and was sentenced to one to two years imprisonment. At the time of Appellant's trial, Martin Chmiel filed a Petition for Reconsideration of Sentence which was granted and his sentence was reduced. N.T. 1083–1085. The record also reveals that Martin Chmiel cooperated with the police investigation by wearing a body wire in an attempt to obtain Appellant's confession.

tin suggested that sleeves be cut off an old brown sweater that he had at home in order to make the masks.

Subsequently, Martin Chmiel once again met Appellant in Appellant's automobile to further discuss the robbery. Martin brought with him to this meeting the two sleeves that he had removed from his brown sweater. During their conversation, Martin continued to fashion the two ski masks from his sweater sleeves by using his fingers to make eye holes and tying a knot at one end of the sleeve and then trying one on to see if it fit. Martin left the two masks in Appellant's automobile.

It was Martin's testimony that either at the second meeting or shortly thereafter, he changed his mind about participating in the robbery. Nevertheless, Martin told Appellant what the Lunario house looked like, how to get to Victor Lunario's bedroom, and where money could be found in Victor Lunario's bedroom.

According to Martin, in the afternoon of September 21, 1983, Appellant told Martin that Appellant had killed the Lunarios and had taken $4,500.00 from a wooden box under Victor Lunario's night stand and $800.00 from Angelina's purse. Martin claimed that he had asked Appellant whether the masks were used. Appellant told Martin that a mask was used but Appellant had gotten rid of it and it would never be found.

As a result of the information provided by Martin Chmiel, Appellant was arrested on September 28, 1983, and charged with the crimes committed against the Lunarios.

In the early morning hours of September 29, 1983, the state police obtained from Martin Chmiel a dark brown and beige sweater with its arms removed and a blue and white flashlight. The blue and white flashlight appeared to be very similar to a flashlight found at the Lunario home on the morning the murders were discovered. Thereafter, that same morning, the state police executed a search warrant at Appellant's home. In a hutch in the dining room, the police officers found

250

an envelope containing $2,400 in U.S. currency, some of which was bound in money wrappers.

Review of the facts of this case leaves no doubt that the evidence was sufficient for the jury to have determined that all elements of the crimes had been established beyond a reasonable doubt.

In his brief and argument before this Court, Appellant has raised numerous allegations of error. However, our resolution of just one of these claims convinces us that a new trial is necessary.

■ It is Appellant's contention that his prior counsel was ineffective for either failing to request an accomplice testimony instruction or failing to preserve such an issue through layered ineffectiveness claims.[2] Appellant argues that the facts of this case clearly indicate that Martin Chmiel, the Commonwealth's chief witness, was an accomplice. Specifically, Appellant cites to Martin Chmiel's own trial testimony wherein Martin admitted that he intended to rob/burglarize the Lunario home; that he aided in the planning of the crimes; that he made masks from his own sweater which were used in the crimes; and that he provided Appellant with key information including the location of the Lunario home, the location of Victor's bedroom, as well as the location of money in Victor's bedroom.

2. At the time of Appellant's trial, the Accomplice Testimony instruction 4.01 of the *Pennsylvania Standard Jury Instructions: Criminal section* (Revised October 1981), provided, in pertinent part, as follows:

> ... These are special rules that apply to accomplice testimony:
> *First,* you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source.
> *Second,* you should examine the testimony of an accomplice closely and accept it only with care and caution.
> *Third,* you should consider whether the testimony of an accomplice is supported, in whole or in part, by other evidence. Accomplice testimony is more dependable if supported by independent evidence. [However, even if there is no independent supporting evidence you may still find the defendant guilty solely on the basis of an accomplice's testimony if, after using the special rules I just told you about, you are satisfied beyond a reasonable doubt that the accomplice testified truthfully and the defendant is guilty.]

■ The Commonwealth now asserts that Martin Chmiel lacked the intent to be an accomplice. However, even if the evidence would support such an inference, the Commonwealth argues that it was Appellant's trial strategy not to use an accomplice testimony instruction, which would necessarily implicate Appellant, but instead suggest to the jury that Martin Chmiel was the sole perpetrator of these crimes.

■ To prove ineffectiveness of counsel, Appellant must show that his assertion is one of arguable merit, that the attorney had no reasonable basis for his/her action or inaction, and that the attorney's action or inaction was prejudicial to the client. *Commonwealth v. Clark,* 533 Pa. 579, 626 A.2d 154 (1993), citing *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). The ineffectiveness of prior counsel must be raised as an issue at the earliest stage in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant. *Commonwealth v. Shannon,* 530 Pa. 279, 608 A.2d 1020 (1992), citing *Commonwealth v. Hubbard,* 472 Pa. 259, 276–277, n. 6, 372 A.2d 687, 695, n. 6 (1977).

The record reflects that Appellant's trial counsel, post-trial counsel, and appellate counsel are not the same person. While trial counsel failed to request an accomplice testimony instruction, Appellant's post-trial counsel also failed to preserve the issue for review through an ineffectiveness claim. Because appellate counsel has now for the first time raised a layered ineffectiveness claim, we find that the claim of trial and post-trial counsel's ineffectiveness for failing to request and preserve the issue of an accomplice testimony instruction is properly before us for disposition.

■ It is well established that in any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution. *Commonwealth v. Turner,* 367 Pa. 403, 80 A.2d 708 (1951); *Commonwealth v. Bubna,* 357 Pa. 51, 53 A.2d 104 (1942). For an accomplice charge to be required, the facts need not require

the inference that the witness was in fact an accomplice; they need only permit such an inference. *Commonwealth v. Sisak,* 436 Pa. 262, 259 A.2d 428 (1969). If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony. *Commonwealth v. Mouzon,* 456 Pa. 230, 318 A.2d 703 (1974). See also *Commonwealth v. Bricker,* 525 Pa. 362, 581 A.2d 147 (1990); *Commonwealth v. Upshur,* 488 Pa. 27, 410 A.2d 810 (1980); and *Commonwealth v. Thomas,* 479 Pa. 34, 387 A.2d 820 (1978).

Initially, we must review the evidence to determine if it permits an inference that Martin Chmiel was an accomplice.[3] We review the evidence in the light most favorable to the Commonwealth as verdict winner below. *Commonwealth v. Burton,* 450 Pa. 532, 301 A.2d 599 (1973).

**3.** 18 Pa.C.S. § 306 provides in pertinent part:

(a) General rule. A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(b) Conduct of another. A person is legally accountable for the conduct of another person when:

(3) he is an accomplice of such other person in the commission of the offense.

(c) Accomplice defined. A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it. . . .

(f) **Exceptions.**—Unless otherwise provided by this title or by the law defining the offense, a person is not an accomplice in an offense committed by another person if:

(1) he is a victim of that offense;

(2) the offense is so defined that his conduct is inevitably incident to its commission; or

(3) he terminates his complicity prior to the commission of the offense and:

(i) wholly deprives it of effectiveness in the commission of the offense; or

(ii) gives timely warning to the law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense.

The testimony of Martin Chmiel was the piece of evidence linking Appellant to the murders of Angelina, Victor and James Lunario. It is this testimony which provides the essential facts from which we must decide if an inference can be drawn that Martin Chmiel was an accomplice.

Martin Chmiel's testimony reveals his own involvement in the events leading to the triple homicide. By his own admission, Martin Chmiel identified the Lunario home as the source for fast money. Martin Chmiel's intention to pursue the resulting criminal activity is clear from him making plans to rob the house in Throop. The extent of his commitment to these plans is evidenced by his use of the sleeves from his old brown sweater to fashion masks which were used in this criminal enterprise. Although he testified that he changed his mind about participating in the robbery, Martin Chmiel told Appellant what the Lunarios' house looked like, how to get to Victor Lunario's bedroom, and where in that bedroom the money was hidden.

Equally clear from his testimony is the fact that Martin Chmiel falls within none of the exceptions to the definition of an accomplice as set forth in 18 Pa.C.S. § 306(f). Although he allegedly terminated his complicity prior to the commission of the offenses, at no time did he deprive it of effectiveness in the commission of the offenses, attempt to prevent the crime, alert the police, or warn the intended victims.

Martin Chmiel's testimony alone is sufficient to create the inference that he was an accomplice to the aforementioned crimes.

Application of the foregoing analysis to Appellant's ineffectiveness claim leads to the conclusion that his assertion is one of arguable merit. Nevertheless, the Commonwealth contends that it was Appellant's trial strategy not to use an accomplice testimony instruction, which would have also implicated Appellant, but instead to suggest to the jury that Martin Chmiel was the sole perpetrator of these crimes. Such an assertion is not borne out by the record which indicates that Appellant's trial counsel argued that these crimes were committed by two

actors, one of whom was Martin Chmiel. For this reason, there was no reasonable basis for prior counsel's failure to request an accomplice testimony instruction from the trial court. Finally, we conclude that such error was prejudicial to Appellant because, if given, the jurors might well have concluded, under proper instructions, that Martin Chmiel was an accomplice whose testimony was of little value. *See Commonwealth v. Sisak,* supra.

The judgment of sentence is reversed and the case is remanded for a new trial.

LARSEN, J., did not participate in the consideration or decision of this case.

FLAHERTY, J., did not participate in the consideration or decision of this case.