741 A.2d 1234

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert FISHER, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 3, 1998.

Decided Nov. 24, 1999.

Reargument Denied Feb. 7, 2000.

Joseph J. Hylan, for Robert Fisher.

Mary McNeil Killinger, Norristown, Robert A. Graci, Harrisburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CAPPY, Justice.

This case appears before the court on direct appeal from a second penalty proceeding. Appellant asserts five claims of trial court error and two claims of ineffective assistance of counsel. For the reasons set forth herein, we affirm the sentence of death.

To facilitate a better understanding of Appellant's claims, we will briefly summarize the procedural history of this case. In 1988, Appellant was convicted of first degree murder and sentenced to death for killing his girlfriend, Linda Rowden, in retaliation for her having given information she provided to police regarding the murder of Nigel Anderson.[1] Appellant was also convicted in federal court for violating the civil rights of Nigel Anderson, but that conviction was later vacated. *United States v. Fisher,* 1990 WL 27350 (E.D.Pa.1990).[2] Due to references to the Anderson conviction during Appellant's trial for the Rowden murder, Appellant's conviction for the Rowden murder was vacated and the matter remanded for a new trial. *Commonwealth v. Fisher,* 527 Pa. 345, 591 A.2d 710 (1991) (*"Fisher I "*). Upon retrial, Appellant was again convicted of first degree murder and sentenced to death in May 1992. On appeal, we affirmed the conviction, but vacated the death sentence and remanded the case for a new penalty hearing because of the improper admission of victim impact evidence during the penalty phase. *Commonwealth v. Fisher,* 545 Pa. 233, 681 A.2d 130 (1996) (Cappy, J., concurring) (*"Fisher II "*). Following a second penalty hearing in 1997, the jury rendered a sentence of death on June 25, 1997, and the trial court imposed the death sentence on July 23, 1997. Appellant then filed a petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 et seq. ("PCRA"), alleging

1. The facts of this case are more fully set forth in *Commonwealth v. Fisher,* 545 Pa. 233, 681 A.2d 130 (1996).

2. In the federal court case, Appellant was convicted by a jury on both counts of an indictment charging him with conspiracy to violate the constitutional rights of Nigel Anderson and obstruction of justice. The federal district court noted that Appellant was essentially charged with murdering Nigel Anderson in order to prevent him from testifying for the government in an imminent criminal trial of one of Appellant's associates. *Id.* at *1. The court granted Appellant's Motion for Acquittal because the evidence, while not ruling out the possibility that Appellant had some involvement in the murder, did not establish his participation beyond a reasonable doubt, nor did it establish that Appellant acted with the specific intent to interfere with Anderson's constitutional rights by preventing him from testifying, or that Appellant acted with the specific intent to obstruct justice by precluding Anderson from testifying. *Id.* at *8. The court also granted, as a cautionary measure, Appellant's motion for a new trial. *Id.*

ineffective assistance of counsel. The trial court appointed new counsel, who filed a Post–Sentence Motion and an amended PCRA petition. Following an evidentiary hearing, the trial court denied the post-trial motion and dismissed the PCRA petition. This appeal followed.

Before addressing the merits of Appellant's claims, we must first clarify a procedural issue. The jury rendered a verdict of death on June 25, 1997, and the death sentence was formally imposed in an order dated July 23, 1997. Appellant's penalty phase counsel filed post-sentence motions on July 31, 1997.[3]

Concurrent with its July 23, 1997 order imposing the death penalty, the trial court filed an order appointing "the Public Defender to represent [Appellant] for purposes of collateral review pursuant to the Capital Unitary Review Act at 42 Pa.C.S.A. 9571, et seq." (CURA). This order also directed counsel to "review the trial and conviction of the Defendant which occurred in August 1991 [*Fisher II*]" and "assert any alleged PCRA claims in this regard in petition form and submit same to the Court." However, by Order dated August 11, 1997, we permanently suspended the Capital Unitary Review Act.

On September 25, 1997, Appellant, pro se, filed a pleading which purported to be a "PCRA" petition and a "Direct appeal for penalty phase". On September 30, 1997, the trial court, having been informed that Appellant had discharged trial counsel, appointed the Public Defender's office "to represent the Defendant in the prosecution of his direct appeal as well as all PCRA claims." On November 17, 1997, Appellant's new

---

**3.** The issues raised in the post-sentence motion involve the first five issues that we address in this opinion, which are as follows: (1) the application of the aggravating factor contained in 42 Pa.C.S. § 9711(d)(15); (2) the admission of the testimony of Detective Salamone regarding the victim's statements of an alleged assault by Appellant; (3) the trial court's failure to allow defense counsel in closing to argue that life imprisonment means life without parole; (4) the prosecutor's reference to the victim's parents during cross-examination; and (5) the prosecutor's questioning regarding Appellant's tattoo. An additional issue, that the Commonwealth failed to produce sufficient evidence to prove beyond a reasonable doubt that Appellant killed Linda Rowden, was not addressed in Appellant's brief to this court.

counsel filed an "Amended Motion for Post–Conviction Collateral Relief" which raised three claims of ineffectiveness of counsel in *Fisher II* and five claims of ineffectiveness of counsel in *Fisher III*.[4] After a hearing, on January 30, 1998, the trial court denied the claims raised in the post-trial motion and dismissed the amended PCRA petition.

The trial court issued an opinion on March 11, 1998 regarding the denial of Appellant's claims. Despite its July 23, 1997 order directing Appellant to file collateral relief claims pursuant to the now-suspended CURA, the trial court determined that Appellant's ineffectiveness claims of penalty phase counsel were incorrectly raised in a PCRA petition. Indeed, the trial court did not even mention that it had ordered that a PCRA petition be filed pursuant to CURA. The trial court inexplicably reasoned that pursuant to 42 Pa.C.S. § 9543(a)(2)(ii), a petitioner is entitled to post-conviction collateral relief only if the ineffective assistance of counsel undermines the truth-determining process relative to Appellant's guilt, and here, at the penalty phase, Appellant's guilt was not at issue. Consequently, the trial court deemed the PCRA petition to be a procedural miscue, and addressed the claims of ineffectiveness against counsel in *Fisher III* as if they had been raised in the post-sentence motion. The trial court did not address the claims of ineffectiveness of counsel in *Fisher II* in its March 1998 opinion. For the sake of judicial economy, we shall treat the claims of ineffectiveness of penalty counsel in *Fisher III* as if they were raised on direct appeal. We have automatic jurisdiction to review the trial court's

---

4. Appellant claimed that penalty phase counsel was ineffective for (1) failing to object to testimony incriminating Appellant in heroin trafficking; (2) failing to object to the prosecutor's improper reference to Appellant's electing to remain silent; (3) agreeing to the admission of certain exhibits; (4) failing to preserve an objection to the testimony of Detective McCloskey regarding the detective's arrest of Appellant in 1987; (5) failing to request a "corrupt and polluted source" charge regarding the testimony of Richard Mayo; (6) failing to raise and present evidence of Appellant's diminished capacity; and (7) failing to challenge the application of 42 Pa.C.S. § 9711(d)(15) on the basis of the federal and state constitutional prohibitions of punishments ex post facto. Appellant has only raised issues (5) and (6) in his brief to this court.

judgment of a death sentence pursuant to 42 Pa.C.S. § 9711(h)(1).

In his first assignment of error, Appellant contends that the trial court erred in permitting the Commonwealth to proceed on aggravating factor 42 Pa.C.S. § 9711(d)(15) (relating to the killing of a nongovernment informant or a person who otherwise provided any investigative, law enforcement or police agency with information concerning criminal activity).[5] Appellant argues that use of this factor constituted a violation of the ex post facto clauses of the United States[6] and Pennsylvania[7] Constitutions. Further, Appellant claims that this provision was not promulgated until December 22, 1989, nine years after the murder at issue occurred, and the General Assembly did not express the intent to apply this law retroactively.

Our interpretation of the state constitutional prohibition against ex post facto laws has been consistent with the United States Supreme Court's interpretation of the federal prohibition, and therefore the analysis of Appellant's federal ex post facto claim encompasses his state claim. *Commonwealth v. Young*, 536 Pa. 57, 637 A.2d 1313, 1317 n. 7 (1993), *cert. denied*, 511 U.S. 1012, 114 S.Ct. 1389, 128 L.Ed.2d 63 (1994).

In 1798, the United States Supreme Court defined an ex post facto law as:

1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.2d. Every law that aggravates a

---

5. In addition to aggravating factor 42 Pa.C.S. § 9711(d)(15), the jury found a mitigating circumstance, "evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa.C.S. § 9711(e)(8). The jury determined that the aggravating factor outweighed the mitigating circumstance.

6. Article I, § 10 of the United States Constitution provides that "No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts...." U.S. Const. art. 1, sec.10.

7. Article I, § 17 of the Pennsylvania Constitution provides that "[n]o ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." Pa. Const. art. 1, sec. 17.

crime, or makes it greater than it was, when committed.3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798).

More recently, the United States Supreme Court stated that in order for a law to violate the ex post facto clause, "a law must be retrospective—that is 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it' [citation omitted] by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997) (*citing Collins v. Youngblood*, 497 U.S. 37, 50, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990)). However, the Court has also determined that the Constitution does not prohibit every retrospective law that alters a party's situation to his disadvantage. *Young*, 637 A.2d at 1317 (*citing Collins*, 497 U.S. 37, 50, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30, 43–44 (1990)).

Appellant argues that the application of section (d)(15) during the 1997 penalty phase hearing aggravated the crime; increased the punishment from life imprisonment to death; and disadvantaged him by making him liable to a penalty to which he was not liable prior to the enactment of the legislation. We cannot agree.

We previously addressed the retroactive application of an aggravating factor in *Commonwealth v. Zook*, 532 Pa. 79, 615 A.2d 1 (1992), *cert. denied*, 507 U.S. 974, 113 S.Ct. 1420, 122 L.Ed.2d 789 (1993). In *Zook*, the appellant was convicted of first degree murder and sentenced to death pursuant to § 9711(d)(11)[8], an aggravating factor which was passed after

8. Section (d)(11) states: "The defendant has been convicted of another murder committed in any jurisdiction and committed either before or at the time of the offense at issue." 42 Pa.C.S. § 9711(d)(11).

the commission of the murder. Like the Appellant in the instant case, the appellant in *Zook* argued that the General Assembly did not intend the amendment to apply retroactively, and that the prohibition against ex post facto laws would preclude the Commonwealth from proceeding under this factor. We rejected this claim, stating: "[a]lthough the multiple murder aggravating factor was enacted after the murders were committed in this case, this fact is of no moment since this factor is similar in substance to an existing factor found at Section 9711(d)(10)." [9] 615 A.2d at 21. We further found that "[w]hile the language is different, both factors encompass first degree murder and therefore there is little difference in substance or effect to the instant case. The Commonwealth could have presented its evidence on the second murder under either aggravating factor." *Id.*

The instant case presents a similar situation. The newly enacted provision at issue here, § 9711(d)(15), is similar in substance to § 9711(d)(5), an aggravating factor which was in effect at the time the offense was committed. Section (d)(5), which was the aggravating factor found by the sentencing jury in *Fisher I,* states:

> The victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceeding involving such offenses.

42 Pa.C.S. § 9711(d)(5).

Section (d)(15), which was the aggravating factor found by the sentencing jury in the instant case, states:

> At the time of the killing, the victim was or had been a nongovernmental informant or had otherwise provided any investigative, law enforcement or police agency with infor-

---

**9.** Section (d)(10) states: "The defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense." 42 Pa.C.S. § 9711(d)(10).

mation concerning criminal activity and the defendant committed the killing or was an accomplice to the killing as defined in 18 Pa.C.S. § 306(c), and the killing was in retaliation for the victim's activities as a nongovernmental informant or in providing information concerning criminal activity to an investigative, law enforcement or police agency.

Appellant claims that reliance on *Zook* is misplaced. He contends that section (d)(5) and section (d)(15) are not the same because the elements are distinct, the conduct addressed by each factor is distinct and (d)(5) is more difficult to prove than (d)(15). We disagree, and find that a substantial similarity exists between these two factors.

Section (d)(5) requires proof of the following elements: (1) the victim was a witness to a murder or other felony committed by the defendant; (2) the killing was for the purpose of preventing the witness' testimony against the defendant in any grand jury or criminal proceeding involving such offenses. In interpreting this aggravating factor, we have determined that it encompasses the killing of a potential witness, even when there is no criminal proceeding pending at the time of the murder, if the killer's intention to eliminate the victim as a potential witness is established through direct evidence. *Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929, 937 (1990), *cert. denied*, 499 U.S. 931, 111 S.Ct. 1338, 113 L.Ed.2d 269 (1991).

The elements of section (d)(15) are substantially similar to those in section (d)(5). First, section (d)(15) requires that the victim was a nongovernmental informant or had otherwise provided any investigative, law enforcement or police agency with information concerning criminal activity. The victim may or may not be a witness and the criminal activity may or may not be a felony or murder. Second, (d)(15) requires that the defendant committed the killing or was an accomplice to the killing; in (d)(5), this element is presumed. Third, (d)(15) requires that the killing was in retaliation for informing or providing information concerning criminal activity. This factor is substantially similar to the (d)(5) factor that the killing was for the purpose of preventing the witness' testimony

against the defendant. We agree with the learned trial court that "whether it be to prevent future cooperation or in retaliation for past cooperation, in both instances the victim is murdered for cooperation with the prosecution." Trial Ct. Opin. at 5–6. "The killing of witnesses constitutes a frontal assault upon the criminal justice system [citation omitted] and, whether the decision to kill is made at an early stage, or later, the assault upon the justice system is the same." *Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929, 938 (1990), *cert. denied*, 499 U.S. 931, 111 S.Ct. 1338, 113 L.Ed.2d 269 (1991). *See also Trotter v. Florida*, 690 So.2d 1234, 1236 (Fla.1996) (use of new aggravating factor of committing crime while in "community control" did not violate state and federal ex post facto clauses because its use "constitutes a refinement in the 'sentence of imprisonment' [aggravating] factor, not a substantive change in Florida's death penalty law."), *cert. denied*, 522 U.S. 876, 118 S.Ct. 197, 139 L.Ed.2d 134 (1997).

As in *Zook*, the same testimony was presented to prove the existence of both aggravating factors (d)(5) and (d)(15) in *Fisher I* and *Fisher III*, respectively. For example, Detective Salamone testified that the victim believed that Appellant had harassed her because she was providing information to the authorities. N.T. 9/13/88 at 111; 6/23/97 at 85–86. Richard Mayo, a friend of the Appellant, testified that Linda Rowden had made statements to police regarding Appellant's involvement in Nigel Anderson's death. N.T. 9/12/88 at 19; 6/23/97 at 148.[10] Denise Walker, another of Appellant's acquaintances, stated that Appellant told her that he had shot Rowden and that Rowden was "running her mouth to police" about Nigel Anderson's murder. N.T. 9/12–13/88 at 111, 113; 6/23/97 at 117.

Despite the similarity in the evidence submitted at both penalty phase hearings, Appellant contends that the sections are different because section (d)(5) requires the Common-

10. Richard Mayo testified in *Fisher I* and *Fisher II*, but he had died by the time of the penalty phase hearing in this case. Consequently, portions of his testimony from the *Fisher II* case were read into the record in *Fisher III*.

wealth to prove that the defendant committed a murder or other felony, while section (d)(15) merely requires proof of general criminal activity. This is a distinction without a difference because in this case, the criminal act is a murder, which satisfies both sections, and thus, there is no prejudice. Appellant further asserts that the evidentiary burden in section (d)(15) is lower than the burden in section (d)(5), and that the Commonwealth could not meet the burden in section (d)(5) in the 1997 penalty phase hearing since Appellant's conviction for the Nigel Anderson murder was reversed in the federal case. We considered, and explicitly rejected, a similar contention in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), in which the appellant argued that "the phrase 'committed by the defendant' indicates a desire on the part of the legislature to impose upon the Commonwealth the additional burden of proving that the collateral 'murder or other felony' must have been *actually* committed by the defendant." 454 A.2d at 952 (emphasis in original). We explained that "[s]uch a burden would be unreasonable and frequently impossible of execution, because, by eliminating critical prosecution witnesses, a criminal defendant could make certain that the Commonwealth could not meet that burden." *Id.* As the Commonwealth here was not required to prove that Appellant actually murdered Nigel Anderson in order to establish a violation of (d)(5), we do not find any significant distinction between the evidentiary burdens of section (d)(5) and (d)(15). Thus, there is no merit in Appellant's contentions.

In *Zook*, we also recognized the rule enunciated by the United States Supreme Court that when a defendant's conviction has been reversed on appeal, " 'the original conviction has been nullified and the slate wiped clean.' Therefore if the defendant is convicted again, he constitutionally may be subjected to whatever punishment is lawful, subject only to the limitation that he receive credit for time served." 615 A.2d at 22 (*quoting Poland v. Arizona*, 476 U.S. 147, 152, 106 S.Ct. 1749, 1753, 90 L.Ed.2d 123 (1986)). In this case, we reversed Appellant's 1988 conviction and sentence of death in 1991.

572

Section (d)(15) was amended in 1989. Appellant was again convicted and sentenced to death in 1992, at which time application of aggravating factor (d)(15) was lawful. Hence, application of section (d)(15) was constitutionally permissible. For the above reasons, we conclude that application of aggravating factor (d)(15) did not violate the ex post facto clause.

Relying on several rules of statutory construction, Appellant also argues that aggravating factor (d)(15) cannot be applied retroactively. *See* 1 Pa.C.S. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."); 1 Pa.C.S. § 1928 (retroactive provisions should be strictly construed); 1 Pa.C.S. § 1953 (new provisions to a statute "shall be construed as effective only from the date when the amendment became effective."). However, Appellant's recitation of the law is incomplete. In interpreting section 1926, we recognized:

> [l]egislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But, where it concerns merely the mode of procedure, *it is* applied, as of course, to litigation existing at the time of its passage. [citation omitted].
>
> . . . . In general terms, substantive laws are those which affect rights, while procedural laws are those which address methods by which rights are enforced.

*Morabito's Auto Sales v. Dept. of Transportation,* 552 Pa. 291, 715 A.2d 384, 386 (1998) (citation omitted). Given the substantial similarity between aggravating factors (d)(5) and (d)(15), and the fact that the evidence proving both aggravating factors is the same, the addition of section (d)(15) is not legislation which affects the rights of Appellant. Accordingly, Appellant is not entitled to relief on this claim.[11]

Appellant next contends that the testimony of Detective Salamone was inadmissible hearsay. Detective Salamone

---

**11.** We reject the Commonwealth's contention that the resolution of this matter by the trial court in the 1991 trial is the law of the case. We are not bound by that ruling since the prior decision emanated from a lower court. *See Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1331 (1995) ("[A] court involved in the later phases of a litigated matter should not reopen questions decided by another judge *of that same*

testified regarding Appellant's alleged assault on Rowden as follows:

> Linda Rowden came into the Detective Bureau of the Borough of Norristown, complained that Robert Fisher had been harassing her and also assaulted her on that particular day of July 8, 1980, due to the fact that she was cooperating with authorities, that being Montgomery County Detectives, into a homicide that occurred of Nigel Anderson at the Crossroads Motel.

N.T. 6/23/97 at 85–86.

Appellant contends that the statement is inadmissible hearsay because it went to establish the truth of the report made by Rowden, and to the aggravating factor to be proven by the Commonwealth. Alternatively, Appellant claims that if the testimony is admissible, it is irrelevant and immaterial since the victim's state of mind was not a factor at issue; rather, it is Appellant's state of mind that is at issue.

Albeit in dicta, we addressed this very issue in *Fisher II*, wherein we considered substantially similar testimony from Detective Salamone [12] and concluded:

> If given the opportunity, the Commonwealth could have successfully argued that the statements were not offered to prove the truth of the matters asserted. The Commonwealth offered evidence that Rowden alleged, truthfully or untruthfully, that Appellant had harassed and assaulted her because of her cooperation with authorities in the Anderson murder investigation and that Rowden's allegations, true or

*court or by a higher court* in the earlier phases of the matter."). Further, contrary to the Commonwealth's suggestion, we did not resolve this issue in *Fisher II;* we clearly stated therein that we did not reach this issue. 681 A.2d at 144 n. 6.

**12.** Detective Salamone's testimony in *Fisher II* was as follows:

> Basically [Rowden] contended that the assault and the harassment [by the Appellant] had been taking place upon her due to the fact that she was providing information to the Montgomery County Detectives concerning the Nigel Anderson investigation of the homicide that occurred at the Crossroads Motel ... [S]he was in fear he might do her bodily harm.

*Fisher II,* 681 A.2d at 140.

untrue were communicated to Appellant. Evidence that Rowden believed that the Appellant was harassing and assaulting Rowden because of her cooperation in the Anderson murder, whether or not Appellant did, in fact, harass Rowden, is clearly relevant to the Commonwealth's argument that Appellant killed Rowden in retribution for and in order to stop her cooperation with authorities in the Anderson investigation.

Out-of-court statements by a murder victim may be admitted to establish motive of the defendant when those statements are not offered to prove the truth of the matter asserted. *Commonwealth v. Griffin*, 511 Pa. 553, 515 A.2d 865 (1986). Further, the Commonwealth offered the testimony of Richard Mayo which corroborated the victim's out-of-court statements.

681 A.2d at 140 (footnote omitted). Detective Salamone's testimony here was not offered to prove that Appellant had assaulted and harassed Rowden, but to establish Appellant's motive for killing Rowden, namely, to prevent her cooperation with law enforcement officials. The trial court admitted the Detective's testimony along with a cautionary instruction mirroring the above-quoted language.[13] Because this testimony was both relevant and admissible, Appellant's claim is without merit.

In Appellant's next assignment of error, Appellant claims that the prosecutor attempted to inject an improper issue into the case, namely, victim impact evidence. Victim impact evidence is characterized in the capital sentencing statute as "evidence concerning the victim and the impact that

---

**13.** The trial court stated:

I'm allowing the testimony concerning Linda Rowden and Detective Salamone relative to her alleged assault and harassment by the Defendant not for the truth of the matter asserted, that is to say, not for you to believe that assault happened or didn't happen. I'm allowing it only for evidence of Miss Rowden's state of mind, not as any evidence toward the propensity—any propensity of violence in the Defendant.

N.T. 6/23/97 at 84. Because we find that the evidence is admissible, we discern no error in the trial court's statement relative to the victim's state of mind.

the death of the victim has had on the family of the victim. . . ." 42 Pa.C.S. § 9711(a)(2).[14] In *Fisher II*, the trial court admitted testimony from the victim's mother regarding the effect of her daughter's murder on the family and instructed the jury to consider the impact of the murder on the victim's family in determining whether to impose a sentence of death. With this author concurring, this court remanded for a second penalty phase hearing because the capital sentencing scheme in effect at the time of the trial did not permit the admission of victim impact evidence, and the admission of such evidence interjected an arbitrary factor into the jury's sentencing decision. 681 A.2d at 145–48.

Appellant's argument is based upon the following exchange which occurred while the prosecutor was cross-examining Appellant:

Q: Would it surprise you to learn in those three times [that you previously testified], you never once testified that you prayed for Linda Rowden? Today is the first time you testified to that. Would that surprise you to learn that? Would you like me to show you the testimony?

A: It doesn't matter because I did. I don't say everything on the stand—just like the questions I was asked today, I could have elaborated on them. I can't sit—stand up here all day and say everything I want to say. There's things I forgot today that when I go back, I think that I wish I had of said.

Q: By the way, you remember these two people here (indicating), Mr. and Mrs. Rowden? Remember them (indicating)?

A: I never met Mr. Rowden. I met Ms. Rowden—

Q: Let me introduce you to them. Here they are (indicating). Remember them?

N.T. 6/24/97 at 31–32.

Contrary to Appellant's assertion, we do not find this exchange constitutes an admission of "victim impact" testimony.

---

**14.** The provision permitting the admission of victim impact evidence was added in the 1995 amendments to the capital sentencing statute. Act of 1995, July 6, No. 22 (Spec.Sess. No. 1).

The exchange at issue is similar to the one discussed in *Commonwealth v. Jones*, 546 Pa. 161, 683 A.2d 1181 (1996). In *Jones*, the prosecutor asserted in closing that if any of the victims' families had testified, they would have provided contrary testimony to the appellant's family's requests for leniency. We found that these remarks were used to rebut appellant's evidence of mitigation, and we further stated:

> [A]lthough it is improper to comment on evidence not of record, we cannot conclude that the isolated reference here made by the prosecutor regarding what the victim's family may say to the pleas of sympathy expressed by the appellant's family was so pervasive or deliberate so that the unavoidable effect thereof was to prejudice the jury to the point that they could not fairly weigh the evidence presented. Certainly, the jury could infer, even absent the above remark, that the victims' families would not be as sympathetic as the family of the Appellant.

*Id.* at 1203.

As in *Jones*, the prosecutor here made an isolated reference to the victim's family when he indicated to Mr. and Mrs. Rowden. Unlike *Fisher II*, no testimony was elicited regarding the impact of the victim's death upon her family, nor was the jury instructed to consider victim impact evidence; in fact, no evidence was presented at all. Moreover, while we do not condone the remarks of the prosecutor, we cannot say that the brief reference to the victim's parents during the course of a three-day trial was so pervasive so as to unfairly prejudice the jury to the point that they could not fairly weigh the evidence presented. Accordingly, Appellant is not entitled to relief on this issue.

Appellant next contends that the trial court erred in refusing to permit defense counsel to argue, pursuant to *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), that a sentence of "life imprisonment" in Pennsylvania means that Appellant would spend the rest of his life in prison without the possibility of parole. Following the mandate of *Simmons*, we have stated that "where future

dangerousness is at issue and a specific request is made by the capital defendant, it is a denial of due process to refuse to tell a jury what the term 'life sentence' means." *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877, 889, *cert. denied*, 516 U.S. 872, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995).

Appellant claims that the prosecution twice put Appellant's future dangerousness at issue. The first instance arose from the cross-examination of a defense witness, Bradley Newton, a Corrections Counselor at the State Correctional Institution at Greene ("SCI–Greene"), who testified about Appellant's behavior while Appellant was incarcerated at SCI–Greene from 1988–1997. Newton noted, *inter alia*, that Appellant had no reports of misconduct or institutional violence; that Appellant's attitude was "very positive"; that Appellant's work reports reflected "generally very good performance"; and that he was cooperative, courteous and related well with other inmates. N.T. 6/23/97 at 212–19. On cross-examination, Newton read from a psychological evaluation of Appellant obtained upon Appellant's arrival to the facility in 1988, and the prosecutor quoted from that report in his closing as follows:

> And here's what his personality make-up was in the opinion of his doctors at the prison: "Self indulgent, oppositional, nonconforming and a somewhat rebellious individual who employs compensatory defenses to cloak and combat fear of a personality diffusion and integration. Tests reveal sexual preoccupation and a tendency for [Appellant] to be provocative, irritable, argumentative and retaliatory in his interpersonal relationships." Retaliatory. *"Sadistic and hostile impulses are suspected with rigid personality features and a potential for explosive action.* [Appellant] possibly harbors persecutory ideas and may project responsibility, parens, blame, end parens, for his problems, frustrations and negative feelings."

N.T. 6/25/97 at 83–84 (emphasis added).

The second instance also occurred during the Commonwealth's closing argument. During cross-examination, Newton stated it was possible that "[Appellant] has an incentive to be a good boy in prison so that [Appellant] can have [Newton]

come in and testify" to Appellant's good behavior. N.T. 6/23/97 at 230. The prosecutor, in his closing, stated:

> Fisher knows that if he's a good boy in prison, he'll now have a record to give you and try to fool you into thinking that that's a mitigating factor and he's not deserving the death penalty. He's manipulating us, and he is trying to manipulate you.
>
> *I wonder if after tomorrow he'll remain a good guy in prison when it no longer matters? It won't do him any good after tomorrow.*

N.T. 6/25/97 at 86 (emphasis added).

Appellant argues that the inference most likely to be drawn from the above-mentioned statements is that he "posed, poses and will continue to pose an explosive and dangerous threat to persons with whom he interacts in the future." Br. at 42–43. However, no references to Appellant's future dangerousness were ever made. We have stated that "instructions detailing the character of a life sentence are not required where future dangerousness is not expressly implicated." *Commonwealth v. King,* 554 Pa. 331, 721 A.2d 763, 779 (1998) (*citing Commonwealth v. May,* 551 Pa. 286, 710 A.2d 44, 47 (1998)). Here, the prosecutor was not urging the jury to consider the future danger posed by Appellant in imposing sentence. *Cf. Simmons,* 512 U.S. at 157, 114 S.Ct. at 2190–91, 129 L.Ed.2d at 139 (prosecutor argued that imposition of the death penalty would be "a response of society to someone who is a threat. Your verdict will be an act of self-defense."); *Commonwealth v. Chandler,* 554 Pa. 401, 721 A.2d 1040, 1046 (1998) (prosecutor stated "life imprisonment in this case is simply not enough. I am asking you, with your verdict today, to stop Kevin Chandler, to stop him from ever hurting another woman again, to stop him from ever killing another woman again."). After reviewing the statements in context, we conclude that these two instances did not impermissibly raise the issue of Appellant's future dangerousness. Rather, the prosecutor's comments were a fair response to the evidence of good character presented in mitigation by Appellant. *Commonwealth v. Cook,* 544 Pa. 361, 676 A.2d 639, 650 (1996), *cert.*

*denied,* 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 851 (1997). Therefore, Appellant cannot obtain relief on this basis.

■ Appellant claims in his final assignment of trial court error that the trial court improperly permitted the Commonwealth to question Appellant regarding a tattoo of the word "Kuda", which Appellant explained was short for "barracuda". The prosecutor asked whether "a barracuda is a predatory fish with a lot of teeth, kind of like a shark" and stated "It's nasty evil fish, isn't it? That's why you had it tattooed on your arm?" N.T. 6/24/97 at 29. Appellant responded that he had received the nickname as a teenager. Appellant argues that such evidence was irrelevant and was used to inflame the jury. We disagree.

At the penalty phase hearing, Appellant presented the testimony of his Corrections Counselor Bradley Newman as to Appellant's reputation for being kind, courteous and relating well with others while imprisoned. Appellant's defense counsel characterized Appellant as a war hero (since Appellant received a Purple Heart in Vietnam) and a model prisoner. Appellant presented evidence that he was devoutly religious. By presenting this evidence as to his good character, Appellant put his character at issue. Having done so, the prosecution was entitled to cross-examine Appellant regarding his tattoo in order to rebut the inference of good character. 42 Pa.C.S. § 5918(1) (authorizing questioning of defendant where defendant "has given evidence tending to prove his own good character or reputation"); *see Commonwealth v. Johnson,* 542 Pa. 384, 668 A.2d 97, 107 (1995), *cert. denied,* 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d. 46 (1996) (no prosecutorial misconduct where the prosecutor asked defendant's character witness if he knew that defendant's nickname was "Will Kill" because "the witness' knowledge that appellant was known as 'Will Kill' was relevant to impeach the witness' testimony concerning appellant's reputation as kind and helpful."). Thus, the trial court did not err in permitting this line of questioning.

■ Appellant also raises two ineffective assistance of

counsel claims.[15] In order to prevail on these claims, Appellant must show that: (1) the claim is of arguable merit; (2) the particular course chosen by counsel had no reasonable basis to effectuate his client's interests; and (3) counsel's ineffectiveness worked to his client's prejudice. *Commonwealth v. Pierce*, 537 Pa. 514, 645 A.2d 189, 194–95 (1994). Counsel's stewardship of the trial is presumptively effective and Appellant has the burden of proving counsel's ineffectiveness. *Id.*[16]

 Appellant first contends that trial counsel was ineffective for failing to request a "corrupt and polluted source" charge with regard to the testimony of Richard Mayo. It is clear that "where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution." *Commonwealth v. Chmiel*, 536 Pa. 244, 639 A.2d 9, 13 (1994) (citations omitted). "For an accomplice charge to be required, the facts need not require the inference that the witness was in fact an accomplice; they need only permit such an inference." 639 A.2d at 13 (citation omitted). On the other hand, where there is no evidence to indicate that a Commonwealth witness was an accomplice, no charge is warranted. *See Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671, 677–78 (1975).

Pursuant to the Crimes Code, a person is an "accomplice" if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

---

**15.** See note 4 supra.

**16.** The Commonwealth contends that Appellant's ineffectiveness claims are waived since they were not raised in the last two appeals, in which current counsel represented Appellant. This claim is frivolous. Appellant was represented by a different attorney in the 1997 penalty phase hearing, and the issue here is the alleged ineffectiveness of that attorney. Current counsel can challenge the actions of Appellant's 1997 penalty phase counsel.

(2) his conduct is expressly declared by law to establish complicity.

18 Pa.C.S. § 306(c).

Appellant asserts that the jury could infer that Mayo was an accomplice because Mayo arranged the meeting between Rowden and Appellant; he was in the car at the time of the shooting; he failed to warn Rowden of the impending murder and failed to express surprise at the shooting; he left the scene without speaking to police; and he provided the name of his twin brother when initially questioned by police.

Mayo testified that Appellant asked Mayo to pick up Rowden because Appellant and Rowden had argued the previous evening and Appellant wanted to talk to her. N.T. 6/23/97 at 168. On cross-examination by defense counsel, Mayo stated that Appellant never told him that Appellant was going to shoot Linda, nor ever threatened to shoot Linda. N.T. 6/23/97 at 189. Mayo further testified that immediately after the shooting, he exited the vehicle and went to a call box to summon assistance for Rowden while Appellant fled. N.T. 6/23/97 at 170. Mayo initially remained on the scene but then left because he was wanted for a parole violation. N.T. 6/23/97 at 170, 176. For that same reason, he gave the police a false name. N.T. 6/23/97 at 170–71.

Appellant has not shown that Mayo intended to promote or facilitate the murder; to the contrary, the record demonstrates that Mayo knew nothing of Appellant's plans. Nor was Mayo ever charged as an accomplice. Moreover, Mayo's call for help for Rowden following the shooting is inconsistent with the claim that he was an accomplice in the slaying. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, as we must, *Chmiel,* 639 A.2d at 13, we find that this evidence would not permit the jury to infer that Mayo was an accomplice in Rowden's murder. Counsel cannot be deemed ineffective for failing to pursue a meritless issue. *Commonwealth v. Chester,* 557 Pa. 358, 733 A.2d 1242, 1253 (1999). As there was no basis to request the corrupt and polluted source charge, this claim fails.

■ Finally, Appellant argues that trial counsel was ineffective for failing to present evidence that Appellant's intoxicated state at the time of the murder resulted in his inability to fully appreciate the nature of his acts. We disagree. At the post-trial motion hearing, Appellant testified that he consumed a number of drugs on the day of the murder, including heroin and methamphetamine. The Sentencing Code permits a defendant to prove as a mitigating circumstance that his "capacity ... to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired." 42 Pa.C.S. § 9711(c)(3).

■ Despite Appellant's claim that he was in a "drug-induced frenzy", two expert reports solicited by prior defense counsel indicated that Appellant's capacity was not diminished on the day of the murder. Counsel cannot be deemed ineffective for failing to pursue a claim of diminished capacity where the psychiatric records indicate that that theory was unsupportable. *See Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890, 897 (1999). Moreover, at the post-trial motion hearing, Appellant's counsel testified that Appellant continued to maintain his innocence even during the penalty phase. N.T. 1/20/98 at 29–30. Clearly, presenting evidence regarding Appellant's inability to appreciate the criminality of his conduct would have been inconsistent with Appellant's claim of innocence. *See Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1190 (1999) (counsel was not ineffective for failing to raise diminished capacity defense where defendant claimed another person had committed the murder). Accordingly, Appellant is not entitled to relief on either of the ineffectiveness claims.

Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), we must affirm the sentence of death unless we determine that (i) the sentence of death was the product of passion, prejudice, or any arbitrary factor; or (ii) the evidence fails to support the findings of at least one aggravating circumstance. After reviewing the record, we conclude that the sentence imposed was not the product of passion, prejudice or any arbitrary factor and the evidence supports the finding of aggravated

circumstance 42 Pa.C.S. § 9711(d)(15).[17] Accordingly, we affirm the sentence of death. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor. 42 Pa.C.S. § 9711(i).

Justice NIGRO files a concurring opinion.

Justice SAYLOR files a dissenting opinion in which Chief Justice FLAHERTY joins.

NIGRO, Justice, concurring.

I join in the Majority opinion, and write separately solely to reaffirm my position that a standardized *Simmons* instruction should be given in all capital cases for the reasons more fully explained in my concurring opinion in *Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 43–44 (1998)(Nigro, J., concurring).

SAYLOR, Justice, dissenting.

I respectfully dissent. This Court has previously indicated that an aggravating circumstance does not apply in the case of a defendant whose crime preceded the enactment into law of that aggravating circumstance. *See Commonwealth v. Sam*, 535 Pa. 350, 635 A.2d 603 (1993), *cert. denied*, 511 U.S. 1115, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994).[1] Because Section

---

**17.** We will not conduct a proportionality review of Appellant's sentence of death, as Appellant was sentenced after June 25, 1997, the effective date of repeal of 42 Pa.C.S. § 9711(h)(3)(iii), which previously required such reviews. *See* Act of 1997, June 25, P.L. 293, No. 28, § 1, imm. effective.

**1.** *See also California Dept. of Corrections v. Morales*, 514 U.S. 499, 509, 115 S.Ct. 1597, 1603, 131 L.Ed.2d 588 (1995) (explaining that, for purposes of *ex post facto* analysis, courts must determine whether the challenged statute "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes"); *United States v. Bertoli*, 40 F.3d 1384 (3d Cir.1994) (stating the general rule applicable in the federal system that the sentencing court must apply the sentencing guidelines manual in effect at the time of sentencing, but noting that where such retroactive application would result in harsher penalties, the court must apply the manual in effect at the time of the offense to avoid improper *ex post facto* application); *State v. Correll*, 148 Ariz. 468, 715 P.2d 721 (1986) (concluding that an amendment adding a new aggravating circumstance is a substantive rather than a procedural

9711(d)(15) of the Judicial Code, 42 Pa.C.S. § 9711(d)(15), was enacted in 1989, nine years after Appellant committed the murder at issue, the jury should not have been allowed to consider the aggravating circumstance set forth in subsection (d)(15).

Nor, in my view, can the reasoning of *Commonwealth v. Zook,* 532 Pa. 79, 615 A.2d 1 (1992), *cert. denied,* 507 U.S. 974, 113 S.Ct. 1420, 122 L.Ed.2d 789 (1993), be relied on to render harmless the jury's finding of this aggravating factor. In *Zook* this Court declared that the application of an aggravating factor adopted after the commission of the offense was "of no moment," *id.* at 119, 615 A.2d at 21, because the challenged factor (the defendant having been convicted of another murder, 42 Pa.C.S. § 9711(d)(11)) was substantially similar to a factor that had been adopted prior to the offense (the defendant having been convicted of another offense for which a sentence of life imprisonment or death was imposable, or the defendant having committed the offense at issue while serving a sentence of life imprisonment, 42 Pa.C.S. § 9711(d)(10)). Since the defendant had committed a prior first-degree murder, this Court reasoned that the Commonwealth could just as well have proceeded under the earlier factor.

The majority concludes that *Zook* applies here because the aggravating factor listed at Section 9711(d)(5), which had been enacted prior to Appellant's commission of the murder, is "substantially similar" to the (d)(15) aggravator. I agree that these aggravators are quite similar. I believe, however, that there is one difference that is material for purposes of this case: Section 9711(d)(5) identifies as an aggravating factor the killing of a prosecution witness for the purpose of *preventing*

change, and that the application of such circumstance to an offense committed before the amendment's effective date would constitute an *ex post facto* law); *Bowen v. State,* 322 Ark. 483, 911 S.W.2d 555 (1995), *cert. denied,* 517 U.S. 1226, 116 S.Ct. 1861, 134 L.Ed.2d 960 (1996) (concluding same, and observing that while aggravating circumstances may constitute "standards" to guide jury, as stated in *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), such standards are substantive rather than procedural, as the addition of an aggravator may have a direct effect on the jury's sentencing decision and thus result in a harsher sentence than if such aggravator were not available).

his or her testimony, whereas Section 9711(d)(15) specifies the killing of an informant *in retaliation for* the informant's activities in aid of law enforcement. Under either aggravator, the issue confronting the sentencing jury is what motivated the killing, but the specific factual conclusions which must be reached in order to find the respective aggravators are different. This is unlike the situation in *Zook*, where the identical, undisputed fact—the defendant's commission of a prior first-degree murder—could support the legal conclusion called for by either aggravating factor at issue. Here, the Commonwealth apparently believed that the facts which suggested Appellant's motive for the killing fit more closely the terms of the (d)(15) aggravator, as the district attorney chose to invoke it and not that of Section 9711(d)(5).

Because Appellant was not called upon to defend the allegation that this killing was committed for the purpose of preventing witness testimony, and the jury was neither asked to make nor made such finding, I do not believe that, under Pennsylvania's capital sentencing scheme, the (d)(5) circumstance should be relied upon, in any manner, to support the determination that Appellant was eligible for capital sentencing. Since the (d)(15) aggravator was not available, and was the only aggravating factor found by the jury, I would vacate the sentence of death and remand for the imposition of a sentence of life imprisonment.

Chief Justice FLAHERTY joins this dissenting opinion.