J-A21012-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM CHILDS, | |
| Appellant | No. 272 EDA 2013 |

Appeal from the Judgment of Sentence January 16, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012722-2010

BEFORE:  BOWES, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                **FILED NOVEMBER 10, 2014**

William Childs appeals from the judgment of sentence of sixteen to thirty-two years incarceration followed by five years of probation imposed by the trial court after one jury found him guilty of third-degree murder and another jury declared him guilty of possession of an instrument of crime ("PIC").  Since we find that instructing a jury regarding the evidentiary presumption that a person acts reasonably in self-defense within his own residence under 18 Pa.C.S. § 505(b)(2.1), would not have been a retroactive application of that law under the facts of this case, we reverse and remand for a new trial.

Appellant resided at 545 North Wannamaker Street with Michael Beander and Samuel Andrews, the latter being the owner of the property in

_____

[*]  Retired Senior Judge assigned to the Superior Court.

question. The decedent, Bryant Bell, had previously lived at the address. Mr. Andrews invited Mr. Bell to his home on July 29, 2010, to celebrate Mr. Bell's birthday, which was the previous day. The men began consuming alcohol before Appellant and Mr. Bell engaged in an argument. Appellant remained seated throughout the argument; as he had previously suffered a spinal cord injury resulting in him having to walk with the aid of a cane. Due to the argument, Mr. Andrews asked Mr. Bell to leave. Accordingly, Mr. Bell left the inside of the home along with Mr. Beander. Mr. Andrews retreated to his room in the upstairs of the home.

Mr. Bell and Mr. Beander remained seated on the outside porch of the residence. At some point, Appellant and Mr. Bell resumed their argument, with Appellant remaining inside the home and yelling through a screen door. According to Mr. Beander, Appellant called the victim a bitch and threatened to "fuck him up." Concomitantly, Mr. Bell responded with profanity, threats to attack Appellant, and calling him a cripple.

Appellant also maintained to police that the victim was speaking to Mr. Beander and threatening to beat up Appellant before walking across the street. Appellant retrieved a knife from the kitchen table. Thereafter, Mr. Bell returned to Appellant's home, proceeded to grab a broomstick from the porch area, and succeeded in opening the door. Mr. Bell struck Appellant with the stick several times before Appellant stabbed Mr. Bell one time in the chest. Appellant then called 911, but the stabbing resulted in Mr. Bell's death. At the time, Mr. Bell had cocaine in his system and a blood

alcohol content of .082%. The Commonwealth charged Appellant with criminal homicide and PIC. Appellant presented a claim of self-defense at trial.

A jury initially deadlocked on the murder charge, but found Appellant guilty of PIC on November 16, 2011. A subsequent trial occurred on the homicide charge, which concluded one year from the first trial, on November 16, 2012. At both trials, Appellant sought a jury instruction based on Act No. 10 of 2011, relative to what is commonly known as the "Castle Doctrine." Specifically, Appellant asked that the jury be instructed that it was presumed that he had a reasonable belief that deadly force was immediately necessary to protect himself from serious bodily injury or death since he acted inside his residence. The Commonwealth objected on the basis that the law did not become effective until August 27, 2011, after Appellant stabbed the victim. The court declined to provide the jury instruction. Following the second trial, the jury found Appellant guilty of third-degree murder.

Subsequently, the court sentenced Appellant to sixteen to thirty-two years incarceration for the third-degree murder count and a consecutive sentence of five years probation on the PIC charge. This timely appeal ensued. The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its opinion. The matter is now ready for our review. Appellant's sole contention on appeal is "Did not the trial

court err in refusing to instruct the jury on the self-defense provisions codified in Act No. 10 of 2011, 18 Pa.C.S. [§] 505(b)(2.1)?" Appellant's brief at 3.

The question before us today is whether consideration of 18 Pa.C.S. § 505(b)(2.1) at Appellant's trial would have resulted in retroactive application of that law. Section 505(b)(2.1) provides:

> Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:
>
> (i) The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.
>
> (ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

18 Pa.C.S. § 505(b)(2.1). Thus, § 505(b)(2.1) creates an evidentiary rebuttable presumption that a defendant acts reasonably in using deadly force where the defendant uses such force against a person unlawfully in or attempting to enter his residence and knows or has reason to believe that the person is there illegally.

The law of retroactivity is less than a model of clarity. In the criminal context, retroactivity concerns usually arise in the context of *ex post facto* issues. Whereas here there are no *ex post facto* implications, criminal case

law has engrafted contract clause and civil law retroactivity analysis into the criminal sphere. *See Commonwealth v. Johnson*, 553 A.2d 897 (Pa. 1989) (citing *Creighan v. City of Pittsburgh*, 132 A.2d 876, 871 (Pa. 1957)); *see also Weaver v. Graham*, 450 U.S. 24, 31 (1981) ("In using the concept of vested rights, *Harris v. Wainwright*, 376 So. 2d, at 856, the Florida court apparently drew on the test for evaluating retrospective laws in a civil context.").

This itself is problematic. While "since the beginning of the Republic and indeed since the early days of the common law: absent specific indication to the contrary, the operation of nonpenal legislation is prospective only[,]" *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 841 (1990) (Scalia, J., concurring), the same is not true in criminal law. *See id*. n.1. (citing *Yeaton v. United States*, 5 Cranch 281, 283 (1809) ("it has been long settled, on general principles, that after the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute."); *United States v. Tynen*, 11 Wall. 88, 95 (1871) ("There can be no legal conviction, nor any valid judgment pronounced upon conviction, unless the law creating the offence be at the time in existence")). Simply put, laws that retroactively benefited an accused were not subject to the same civil law prohibition against retroactive laws.

Indeed, the common law doctrine of abatement has long been applied in Pennsylvania. From the early days of this Commonwealth, the prohibition against retroactive criminal laws did not apply to statutes affecting the substantive rights of an accused where the law benefited the accused. In *Commonwealth v. Duane*, 1 Binn. 601 (Pa. 1809), the Pennsylvania Supreme Court expressly distinguished between the prohibition against civil retroactive laws and ameliorative retrospective criminal legislation. There, the defendant was indicted and found guilty of committing a libel against Pennsylvania's governor in his official capacity. However, prior to his judgment of sentence, the legislature passed a law stating that no person was to be prosecuted by indictment for publication of papers or for investigating the official conduct of men in a public capacity. Counsel for Duane argued that the law interfered with no vested right, did not violate any right of property, and effectively terminated his prosecution. The Pennsylvania Supreme Court agreed, with Chief Justice Tilghman stating, "If the same expression had been used, as applied to a civil action, I should have thought myself warranted in giving it a different construction, because then it would have operated in a retrospective manner, so as to take away from a citizen a vested right. But there is a wide difference between a civil and a criminal action." *Id*. at 608-609.

Importantly, it must first be determined whether the statute in question would operate retroactively, *Gehris v. Commonwealth,*

*Department of Transportation*, 369 A.2d 1271, 1273 (Pa. 1977), which is generally permissible only in limited circumstances.  The Pennsylvania Supreme Court has held that "a statute does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment."  *Id*.  In the civil arena, Justice Joseph Story, writing while on circuit, offered a concise summary of retroactive civil laws, which has subsequently been adopted by the United States Supreme Court, *see Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and utilized by courts in this Commonwealth.  Justice Story opined, "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective[.]"  *Society for the Propagation of the Gospel v. Wheeler*, 22 F.Cas. 756, 767 (1814).  Justice Duncan of the Pennsylvania Supreme Court echoed this definition and cited Justice Story's opinion in *Eakin v. Raub*, 12 Serg. & Rawle 330, but, in doing so, also recognized the critical distinction between the prohibition against civil retroactive law and ameliorative criminal legislation.  *Id*. at 362.

More recently, Pennsylvania courts have utilized the civil retroactivity test in criminal cases by setting forth that a statute is impermissibly retroactive if it "attaches new legal consequences to events completed before its enactment.  Retroactive application occurs only when the statute

or rule relates back and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired." **Commonwealth v. Robinson**, 7 A.3d 868, 871-872 (Pa.Super. 2010) (internal quotations omitted).

Our Supreme Court has also held that, if no vested right or contractual obligation is impaired or destroyed, a statute can apply to facts existing on the law's effective date, which resulted from events that occurred prior to that date. **Johnson**, **supra** at 900 ("Only where a vested right or contractual obligation is involved is a statute applied 'retroactively' when it is applied to a condition existing on its effective date which resulted from events which occurred prior to that date."); **See Creighan**, **supra** at 871 ("a statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation"); **Pope v. Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co.**, 107 A.2d 191, 192 (Pa.Super. 1954) ("If 'no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date.'"); **Commonwealth v. Palmer**, 558 A.2d 882, 883 (Pa.Super. 1989); **Cox v. Hart**, 260 U.S. 427, 435 (1922) ("The proviso so construed impairs no vested right and brings into existence no new obligation which affects any private interest."); **Goodyear v. Rumbaugh**, 13 Pa. 480, 481 (1850) (Married Women's Act of

1848 was not improperly retrospective because it did not "interfere with vested rights.").

This Court has defined a vested right as one that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." *In re R.T.*, 778 A.2d 670, 679 (Pa.Super. 2001). In *Eakin*, *supra* at 360, Justice Duncan opined, "a vested right is where a man has power to do certain actions, or to possess certain things, according to the laws of the land." A vested right is fixed and without condition. *Ashbourne School v. Department of Education*, 403 A.2d 161, 165 (Pa.Cmwlth. 1979).

Further, if a statute is remedial, curative, or validating legislation, it may not be subject to the prohibition against retroactive application. *Pope*, *supra* at 192 ("if a statute is curative, remedial or procedural only, it may be applicable to litigation instituted prior thereto but not completed."); *In re Malik*, 8 A.2d 494 (Pa.Super. 1939); *Commonwealth v. Duffy*, 96 Pa. 506 (1880); *Shonk v. Brown*, 61 Pa. 320 (1869); *Hepburn v. Curts*, 7 Watts 300, 301 (Pa. 1838) ("The legislature, provided it does not violate the constitutional prohibitions, may pass retrospective laws, such as in their operation may affect suits pending, and give to a party a remedy which he did not previously possess, or modify an existing remedy, or remove an

impediment in the way of recovering redress by legal proceedings."); *but see Commonwealth v. Shaffer*, 734 A.2d 840 (Pa. 1999).[1]

In addition, legislative provisions that are purely procedural can without censure apply retroactively. *See Commonwealth v. Estman*, 915 A.2d 1191 (Pa. 2007); *Morabito's Auto Sales v. Commonwealth*, 715 A.2d 384, 386 (Pa. 1998) ("It is well settled, however, that legislation concerning purely procedural matters will be applied not only to litigation commenced after its passage, but also to litigation existing at the time of passage.") *Kuca v. Lehigh Valley Coal Co.*, 110 A. 731, 732 (Pa. 1920) (holding a procedural statute was not retroactive because "it does not disturb vested rights, or impair contract obligations."). However, statutes infringing substantive rights are generally not to apply retroactively. *Estman*, *supra*. The legislature may, of course, clearly and manifestly express an intent for a statute to apply retroactively. 1 Pa.C.S. § 1926; *see also Anderson v. Sunray Elec. Inc.*, 569, 98 A.2d 374, 375 (Pa.Super. 1953). ("Unless the legislature clearly manifests its intention otherwise, no law may be construed to be retroactive, and then only where it does not destroy vested rights or impair the obligations of contracts.").

The Pennsylvania Supreme Court has defined procedural and substantive law by opining, "substantive laws are those which affect rights,

_____

[1] Application of the statute in *Shaffer* would have resulted in *ex post facto* problems since the law expanded Pennsylvania's corrupt organizations statute to encompass illegal enterprises.

while procedural laws are those which address methods by which rights are enforced. The demarcation between substantive and procedural laws is, however, at times shadowy and difficult to determine." **Morabito's Auto Sales**, **supra** at 386 (internal citations omitted); **see also Estman**, **supra** at 1195 (quoting **Commonwealth v. Morris**, 771 A.2d 721, 738 (Pa. 2001), and stating, "substantive law is that part of the law which creates, defines and regulates rights, while procedural laws are those that address methods by which rights are enforced."). "As threads are woven into cloth, so does procedural law interplay with substantive law. Together, they create a cohesive whole. However, it is this very proximity which often leads to difficulty in identifying one thread as procedural and another as substantive." **Laudenberger v. Port Authority of Allegheny County**, 436 A.2d 147, 150 (Pa. 1981).

We add that, in varying contexts, this Court has considered new statutory law to apply to proceedings that transpire after the effective date of the law, even though the case began before the effective date of the new law. For example, in **In re C.R.F. III v. S.E.F.**, 45 A.3d 441 (Pa.Super. 2012), we applied the new Child Custody Act to a proceeding involving a mother's petition to relocate in a custody action that began before the passage of the law. There, the statute became effective on January 24, 2011. The legislature, unlike here, expressly set forth that "a proceeding under the former provisions of 23 Pa.C.S. Ch. 53 which was commenced

before the effective date of this section shall be governed by the law in effect at the time the proceeding was initiated." 2010 Pa. Legis. Serv. Act 2010–112, §§ 4–5 (H.B.1639). Construing the word "proceeding" as not encompassing an entire custody action, **see also E.D. v. M.P.**, 33 A.3d 73 (Pa.Super. 2011), this Court ruled that, although the mother in **C.R.F. III** filed her petition to relocate in the custody case before the effective date of the statute, because the hearing commenced after that date, the new law applied. The Supreme Court has not *sua sponte* struck down this statute as impeding its procedural rule-making authority.

In **Robinson**, **supra**, this Court rejected the Commonwealth's contention that utilization of the Recidivism Risk Reduction Incentive ("RRRI") sentencing program to a person charged with crimes prior to its enactment, was an impermissible retroactive application of that law. In **Robinson**, the defendant was charged with various drug offenses that transpired between February and April 2007. The court conducted a bench trial on June 17, 2008. On November 24, 2008, the RRRI sentencing statute became effective. The court issued its verdict on January 21, 2009, and sentenced the defendant on April 16, 2009. The **Robinson** Court reasoned, "the Legislature, in enacting the statute, did not impose new legal burdens on past transactions or occurrences which Appellant committed." **Id**. at 873. It added that Robinson had "no vested 'right' to be placed on parole, because parole is an act of grace, not of right." **Id**. The panel concluded,

"application of the RRRI statute to a defendant convicted and sentenced after the law became effective, as is the case with [Robinson], does not violate the restriction set on the retroactive effect of statutes." *Id*.

In ***Bethea v. Philadelphia AFL-CIO Hospital Assocation***, 871 A.2d 223 (Pa.Super. 2005), this Court concluded, in a medical malpractice case filed before the passage of the MCARE statute, that expert testimony presented after the passage of the law had to meet the MCARE requirements under section 512 of that act. The panel ruled that the statute in question was procedural only and the prohibition against retroactive application did not apply.

In ***Johnson***, ***supra***, our Supreme Court applied a new five-year statute of limitations that became effective after the defendant committed his crimes therein. The ***Johnson*** Court found that the defendant "had no vested 'right' to be free from conviction within two years after he committed the crime for which he was later tried." *Id*. at 900. It added, "A criminal statute of limitations is an act of legislative grace, not of right. Thus, the concept of retroactivity, and the correlative presumption of prospectivity embodied in 1 Pa.C.S. § 1926, are inapplicable here." *Id*.

Appellant makes four separate arguments in support of his position that the court erred in determining that the application of the evidentiary presumption in this case would be impermissibly retroactive. First, he maintains that the legislature did clearly and manifestly express an intent for

the applicable law to apply to trials that occurred on or after its effective date. According to Appellant, the General Assembly is not required to incant "magic words" for a law to apply to a trial occurring after the effective date of the statute. Appellant's brief at 19. In this respect, he points out that in enacting the legislation that created § 505(b)(2.1), the General Assembly set forth in the preamble:

> (1) It is proper for law-abiding people to protect themselves, their families and others from intruders and attackers without fear of prosecution or civil action for acting in defense of themselves and others.
>
> (2) The Castle Doctrine is a common law doctrine of ancient origins which declares that a home is a person's castle.
>
> (3) Section 21 of Article I of the Constitution of Pennsylvania guarantees that the 'right of the citizens to bear arms in defense of themselves and the State shall not be questioned.'
>
> (4) Persons residing in or visiting this Commonwealth have a right to expect to remain unmolested within their homes or vehicles.
>
> (5) No person should be required to surrender his or her personal safety to a criminal, nor should a person be required to needlessly retreat in the face of intrusion or attack outside the person's home or vehicle."

Act 2011-10, June 28, P.L. 48. In Appellant's view, the preamble recognizes and endorses long-standing pre-existing common law and constitutional rights, and did not intend for the implementation of the ameliorative legislation to be deferred.

Second, Appellant posits that § 505(b)(2.1) creates a presumption which only has "legal import . . . when the finder of fact is using the

- 14 -

presumption to evaluate the evidence, and determine (in the circumstances of the case at bar) the merits of the asserted claim of self-defense." Appellant's brief at 20 (emphasis removed). Accordingly, a presumption is only relevant at the time of trial and application of the statute to Appellant's trial after the effective date of the legislation is not improper. Put simply, "the effective date of the Act No. 10 presumption must be linked to the time of trial—not the time of the underlying conduct." Appellant's brief at 20-21.

Next, Appellant asserts that assuming *arguendo* that § 505(b)(2.1) is substantive, it is ameliorative legislation, *i.e.*, it is defendant favorable. Appellant maintains that Pennsylvania law "has in place an 'ameliorative amendment' doctrine when substantive criminal law has been amended in a defendant-favorable manner." *Id*. at 21. In this regard, Appellant highlights that prior cases have determined that statutes that reduce a criminal penalty after a defendant has committed the crime, but before the defendant is sentenced, receive retrospective application. *Id*. (citing *Commonwealth v. Swavely*, 322 A.2d 710 (Pa.Super. 1974); *Commonwealth ex rel. Milk v. Maroney*, 181 A.2d 702 (Pa.Super. 1962)).

In *Swavely*, the defendant pled guilty to driving with a suspended license on November 13, 1972. At the time of his arrest for that offense, which occurred on January 23, 1972, the statutory penalty called for a fine of at least $100 and not more than $500, or imprisonment for no more than

three years, or both.  However, on May 26, 1972, the legislature amended the penalty provision to reduce the fine to not less than $100, nor more than $200, or imprisonment not to exceed two months, or both.  The new statute did not contain a savings clause.  The *Swavely* Court reasoned that because the amended penalty statute "did not contain any 'saving clause' to continue the effect of the prior repealed penalty provision, we hold that the lower court erred in sentencing appellant under the repealed penalty provision[.]" *Swavely*, *supra* at 711 (footnote omitted).

In support, the court in *Swavely* relied on *Milk*, *supra*.  In *Milk*, the defendant was incarcerated in a state correctional institution on a sentence of ten to twenty years.  The defendant escaped, and, after being apprehended, pled guilty to that offense.  The court imposed a seven-and-one-half-to-fifteen-year sentence, but suspended the sentence.  The defendant attempted to escape from prison again, and the court revoked the suspended sentence and directed the defendant to serve the sentence.  Prior to the defendant's sentencing, however, the legislature reduced the maximum punishment for his crime to ten years.  The *Milk* Court ruled that the defendant was subject to the lesser penalty.

Appellant acknowledges that the law in question does not pertain to a reduction in a criminal penalty, but contends that its ameliorative effect is greater because it is codifying common law and constitutional rights.  According to Appellant, "[t]here is no reason in logic to apply the

ameliorative amendment doctrine only when there is a reduction in a defendant's penalty, but to withhold it when there is a recognition of common law and constitutional rights that culminates in legislation that vindicates this right[.]" Appellant's brief at 22.

Lastly, Appellant argues that § 505(b)(2.1) is procedural and not substantive. Appellant notes that the statute does not alter the substantive elements of self-defense, but only creates an evidentiary presumption that persons inside their own abodes act reasonably in using deadly force where the other person is an intruder or attempting to illegally enter the residence. Relying on **Commonwealth v. DiFrancesco**, 329 A.2d 204 (Pa. 1974), Appellant submits that evidentiary presumptions are procedural. In **DiFrancesco**, the Pennsylvania Supreme Court opined that a presumption "is a procedural device which not only permits an inference of the 'presumed fact', but also shifts to the opposing party the burden of producing evidence to disprove the presumed fact." **Id**. at 207 n.3.

Appellant also analogizes § 505(b)(2.1) to the Pennsylvania Rules of Evidence, which apply to proceedings that begin on or after the effective date of the rules. For Appellant, "[b]oth the Rules of Evidence and the Act No. 10 presumption at issue here are procedural in a similar way—both set rules as to what a jury can consider (and how it can consider it) in making its fact-finding determination." Appellant's brief at 24.

- 17 -

The Commonwealth replies that Appellant was not entitled to a self-defense instruction because self-defense was not at issue.[2]  In support of this position, it argues that Appellant claimed that he stabbed the victim unintentionally.  Reading Appellant's statement to police after the incident, the Commonwealth suggests that, because Appellant did not admit to stabbing the victim intentionally, he received a windfall by getting a self-defense instruction.

Appellant did inform police that, "I stabbed him unintentionally.  I was just trying to scare him.  I didn't mean to kill him."  N.T., 11/15/12, at 132. However, in the same statement he also asserted that he was attempting to poke the victim with the knife and set forth, "I did not mean to stab him to hurt him.  I just wanted to scare him.  I didn't mean to hurt or kill him, I was just trying to defend myself."  *Id*. at 136.  Mr. Beander also testified in response to the prosecutor's questioning that Appellant told him that he had to defend himself and provided a similar statement to police during the investigation.  Another witness, Anginella Murray, also told police that Appellant insisted that he acted in self-defense.

_____

[2]  The Commonwealth did not object to the jury instruction on self-defense that the trial court provided, nor did it argue that self-defense was not at issue. Indeed, during the first trial, the prosecutor in her opening statement set forth that the jury would be instructed on self-defense.  **See** N.T., 11/8/11, at 69-70.  At the second trial, the prosecutor indicated in her opening statement that the court "may instruct you at the end of trial about what self defense is."  N.T., 11/13/12, at 27.

The Commonwealth relies on **Commonwealth v. Harris**, 665 A.2d 1172 (Pa. 1995), in advancing its argument. In **Harris**, the defendant shot and wounded the father of his wife's son inside the defendant's home. The defendant therein testified that his weapon, a shotgun, accidentally discharged when his wife and the victim attempted to secure the weapon from him. The Pennsylvania Supreme Court ruled that, because the defendant testified that he did not intend to fire the weapon, a self-defense instruction was not warranted. As Appellant's statement and the evidence herein are distinguishable from **Harris**, we reject the Commonwealth's position that no self-defense charge was warranted at all. It is evident that Appellant was stating that he did not specifically intend to kill the victim, but did intend to defend himself by poking his knife at the victim.

The Commonwealth also rejoins that, since Appellant stabbed the victim on July 29, 2010, and the presumption in question did not become law until August 27, 2011, he was not entitled to the requested jury instruction at his trial that occurred post-August 27, 2011. It points out that the statute was approved on June 28, 2011, and was to take effect in 60 days. Relying on 1 Pa.C.S. § 1926 and 1 Pa.C.S. § 1953, the Commonwealth contends that the statute does not apply retroactively. In this respect, § 1926 reads, "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926. Concomitantly, § 1953 provides,

> Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended, and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective.

1 Pa.C.S. § 1953.

The Commonwealth maintains that although the preamble underscores "the significance of the right of self-defense, [it] simply does not speak to the question of retroactivity." Commonwealth's brief at 13. According to the Commonwealth, the legislature was well aware of the manner in which it could make the statute retroactive. It adds that Appellant's reliance on *Swavely* and *Milk* is misguided. The Commonwealth distinguishes those cases on the grounds that they apply to sentencing. Without citation to any Pennsylvania law, the Commonwealth asserts that those decisions "do not speak to changes in the law that affect the manner in which the prior conduct of the accused is evaluated at trial." Commonwealth's brief at 16. The Commonwealth further rejects Appellant's reliance on *DiFrancesco* and posits that the applicable statute is not purely procedural. It sets forth that the Pennsylvania Supreme Court has exclusive procedural rule making

authority, and therefore, if the statute were considered procedural, it would be of questionable constitutionality.[3]

The Commonwealth adds that, in Florida and Michigan, courts have concluded that application of a new broader Castle Doctrine in those states to criminal acts occurring before the passage of their respective laws would have been impermissibly retroactive. *See Smiley v. Florida*, 966 So.2d 330 (Fla. 2007); *People v. Conyer*, 762 N.W.2d 198 (Mich.App. 2008). This case, unlike those matters, does not involve the application of Act 10 to a claim of self-defense in one's vehicle or in a setting outside of the defendant's home. Since this case does not involve an extension of the Castle Doctrine to areas outside a person's residence, the discussions contained in those jurisdictions is unavailing.

The Castle Doctrine, as it is commonly known and was referred to in the preamble to Act 10, existed at English common law well before the

_____

[3] We note that our Supreme Court in *Commonwealth v. Fisher*, 741 A.2d 1234, 1241 (Pa. 1999), declared that a statutory provision relative to aggravating factors for the death penalty statute was not substantive; however, it did not declare the law to be an unconstitutional invasion of its procedural rule-making authority. Importantly, the Supreme Court has *sua sponte* ruled that statutes unconstitutionally violate its rule-making power. *In re Suspension of Capital Unitary Review Act*, 722 A.2d 676 (Pa. 1999). Therefore, it is immaterial whether or not a party raises this concern before that Court. To the extent the Commonwealth suggests that a statutory provision that operates in a procedural manner can never be passed by the legislature, we believe that position is legally untenable. *See Fisher*, *supra*.

founding of America.[4]  Lord Chief Justice Matthew Hale opined, where a man "is assailed in his own house, he need not flee as far as he can, as in other cases of *se defendendo*, for he hath the protection of his house to excuse him from flying, as that would be to give up the protection of his house to his adversary by flight."  **People v. Tomlins**, 107 N.E. 496, 497 (N.Y. 1914) (quoting 1 Hale's Plea of the Crown, 486).  Justice Benjamin Cardozo, while on the New York High Court one hundred years ago, posited that "[f]light is for sanctuary and shelter, and shelter, if not sanctuary, is in the home. That there is, in such a situation, no duty to retreat is, we think, the settled law in the United States as in England."  **Id**. at 497.

The United States Supreme Court endorsed the Castle Doctrine in **Beard v. United States**, 158 U.S. 550 (1895), reasoning that one had no duty to retreat even when outside the dwelling if still on one's own property.

_____

[4]  Lord Edward Coke opined in **Semayne's Case**, 77 Eng. Rep. 194, 195 (K.B. 1604), "the house of every one is to him as his castle."  John Adams remarked in 1774,

> "An Englishman[']s dwelling House is his Castle.  The Law has erected a Fortification round it—and as every Man is party to the Law, i.e., the Law is a Covenant of every Member of society with every other Member, therefore every Member of Society has entered into a solemn Covenant with every other that he shall enjoy in his own dwelling House as compleat a security, safety and Peace and Tranquility as if it was surround with Walls of Brass, with Ramparts and Palisadoes and defended with a Garrison and Artillery[.]"

1 Legal Papers of John Adams, 137 (L. Kinvin Wroth & Hiller B. Zobel eds., 1965).

Pennsylvania courts first discussed the question of whether there is a duty to retreat in one's dwelling in 1952. *See Commonwealth v. Fraser*, 85 A.2d 126 (Pa. 1952). Therein, it adopted the common law doctrine stating that the law governing the absence of a duty to retreat when in your own house "has always been recognized as the law in this State, and the fact that it has not been seriously questioned accounts for the apparent dearth of any express statement or ruling on the subject by our appellate courts." *Id*. at 128.

Prior to the passage of Act 10, aspects of the common law governing self-defense in this Commonwealth had been codified by statute,[5] in relevant part, as follows:

> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
>
> (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
>
> (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take, except that:

_____

[5] We are cognizant that, at common law, the defendant bore the burden of establishing self-defense by a preponderance of the evidence. *See Commonwealth v. Mouzon*, 53 A.3d 738 (Pa. 2012). Currently, the Commonwealth bears the burden of demonstrating beyond a reasonable doubt that the defendant did not act in self-defense. *Id*. at 743.

- 23 -

(A) the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be;

18 Pa.C.S. § 505.

Accordingly, before the passage of the new act, a self-defense claim by an individual who was in his residence required that some evidence be shown, by either the Commonwealth or the defendant, that the defendant reasonably believed he was in imminent danger of death or serious bodily injury and it was necessary to use deadly force to prevent such harm. Additionally, the defendant must not have provoked the use of force against himself in that same encounter with the intent of causing death or serious bodily injury. *Commonwealth v. Samuel*, 590 A.2d 1245, 1248 (Pa. 1991) ("in order to find that the defendant had forfeited his right to self-defense pursuant to the doctrine of provocation, the facts must support the statutory requirement that the defendant, with the *intent of causing death or serious bodily injury,* provoked the use of force.") (italics in original).

Following the passage of Act 10, it is explicitly presumed that a person acts reasonably in using deadly force where another individual unlawfully and forcefully enters or is in the process of entering the residence of the person allegedly acting in self-defense. Hence, the defendant need not introduce evidence that he reasonably believed he was in imminent danger of death or serious bodily injury.

Here, we find that Act 10 does not interfere with or impair a vested right of either the Commonwealth or Appellant. While Appellant has a vested right to self-defense, Act 10 does not interfere or impair that right. Nor did Appellant have a vested right in favor of an evidentiary presumption. The General Assembly did not impose additional legal burdens on Appellant by passing the presumption. In addition, the Commonwealth has no vested right against an evidentiary presumption in self-defense cases. Since the Commonwealth has no vested right against the creation of evidentiary presumptions with respect to self-defense claims, and Appellant has no vested right to an evidentiary presumption in his favor, Act 10's evidentiary presumption for those acting in their homes would not operate retroactively in trials occurring after its effective date simply because the criminal act transpired before the passage of the statute.

We are aware that some iterations of the civil retroactivity test, encased onto criminal matters, also discusses whether the law changes the legal consequences of acts completed before the effective date of the statute, or creates a new obligation, or imposes a new duty for past transactions. **See Robinson**, **supra**. The legal consequences of Appellant not retreating in his own home are identical before and after Act 10. Further, the Commonwealth's burden of proving beyond a reasonable doubt that a person acted unreasonably in using deadly force inside his or her home is unchanged.

Both before and after Act 10, defendants were presumed innocent of the crimes charged and were thereby presumed to have acted reasonably if they forwarded a self-defense claim. The Commonwealth would present the same evidence to establish Appellant's guilt under either Act 10 or the former law. *Cf. Commonwealth v. Fisher*, 741 A.2d 1234, 1241 (Pa. 1999) (since the same evidence would be used to prove a new aggravating death penalty factor as under the prior law, the new statute did not affect the substantive rights of the defendant). Thus, where the claim of self-defense is premised on actions in the home, the evidentiary presumption in Act 10 affects no new substantive change in the law.

Portions of Act 10 that are not relevant here undoubtedly broaden the substantive rights of an accused. *See e.g.* 18 Pa.C.S. § 505(b)(2.3). Of course, the prohibition against retroactive legislation that affects substantive rights was never construed at common law to apply to laws that benefit the accused, *see Duane*, *supra*; *see also Landgraf*, *supra* at 270-271, but applied to laws that impaired or infringed a substantive right. The legislative enactment of 1 Pa.C.S. § 1926, and its predecessor, 46 P.S. § 556, was intended as a codification of the common law rule, not a rejection of that rule. As Appellant recognizes, even after the legislature adopted a statutory prohibition against retroactive legislation, that prohibition has not been applied to ameliorative sentencing laws. *See Swavely*, *supra*; *Milk*, *supra*; *see also Robinson*, *supra*.

Although the evidentiary presumption for defendants acting in their own residences is not a sentencing law, nor does it completely remove criminal liability, neither does it create or define the right of self-defense in one's home. Instead, it addresses a method of enforcing that right of self-defense.[6] Moreover, evidentiary presumptions are procedural mechanisms. *DiFrancesco*, *supra*. Accordingly, the evidentiary presumption for defendants acting in their residence is not retroactive merely because it would be used in a trial after the law's effective date, where the person on trial committed the acts prior to the statute's enactment. Since the trial court erroneously concluded that providing the jury instruction would have been a retroactive application of the pertinent law, we find that Appellant is entitled to a new trial.

Judgment of sentence reversed. Case remanded. Jurisdiction relinquished.

Judge Ott joins the Memorandum.

Judge Strassburger files a Dissenting Memorandum.

_____

[6] We note that we are not faced with the question as to how the evidentiary presumption applies to a person in a vehicle self-defense case or other aspects of the statute as it pertains to one's right to stand his or her ground outside the home.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2014