J-S04017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                              : PENNSYLVANIA
                              :
            v.                :
                              :
                              :
ERIC M. COOPER                :
                              :
            Appellant         : No. 1285 EDA 2024

Appeal from the PCRA Order Entered April 29, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0008618-2010

BEFORE: OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 7, 2025**

Appellant, Eric M. Cooper, seeks review of an order entered by the Court

of Common Pleas of Philadelphia County (PCRA court) dismissing his petition

for postconviction relief. In 2012, Appellant was found guilty following a jury

trial of third-degree murder and other related offenses stemming from a fatal

drive-by shooting. He was sentenced to an aggregate prison term of 17.5 to

60 years, and the judgment of sentence was upheld on direct appeal.

Appellant timely filed a petition for postconviction relief in 2016 and it was

thereafter amended several times, until 2024, when the PCRA court dismissed

the operative version. In the present appeal, Appellant contends that the

PCRA court erred in dismissing his petition because his claims of trial counsel's

ineffectiveness, and his claim of after-discovered evidence, entitle him to a

new trial or an evidentiary hearing. Upon review, we affirm.

The underlying facts of the case have previously been summarized in Appellant's direct appeal:

On March 9, 2007 at approximately 3:18 p.m., Jacque Warren drove a purple van with a white fender in the area around 945 South 53rd Street in Philadelphia. After circling the block, Warren drove back up the street. The sliding door of the van on the driver's side opened, and Nutta Verdier emerged and began shooting at Darrell Cobb. Appellant also exited the van from the passenger side and began shooting at Darrell Cobb. A man identified as "GoGo" also exited the van and began shooting in "a whole opposite way."

Gary Autry Bigelow and Derrick Seals were outside an auto mechanic shop at 945 South 53rd Street at the time of the incident. Bigelow was the stepson of the shop owner, and Seals was working as an auto mechanic at the shop. During the incident, Bigelow was shot twice, once in the back and once in his left thigh. He was taken to the Hospital of the University of Pennsylvania and was pronounced dead at 3:47 p.m. the same day. Seals ran to his vehicle and attempted to drive to safety; however, he was shot through the back windshield. The bullet hit his right arm, and Seals suffered nerve damage from the wound; he is unable to work as an auto mechanic as a result of his injury.

While investigating the incident, police obtained a search warrant for, and recovered, a purple van with a white fender in the area of 5400 Belmar Terrace on March 13, 2007. The police learned the van was owned by Joyce Chavis, and her address was 5410 Belmar Terrace. On March 22, 2007 at approximately 5:30 a.m., Detective Joseph McDermott of the Philadelphia Police was executing a search warrant and attempting to arrest an individual pursuant to an arrest warrant, for an unrelated matter, at 5427 Belmar Terrace. After the attempt at finding the suspect was unsuccessful, Detective McDermott observed that an indoor light was illuminated at 5410 Belmar Terrace. He and Detective Maurizio knocked on the door, and Chavis answered and identified herself as the van owner and confirmed she lived in the residence. As the detectives were speaking to Chavis, a male appeared from the cellar stairway of the residence, looked in the direction of the detectives, and began running to the back of the residence. Detective Maurizio ran through the house and detained the male.

Detective McDermott then heard running in the upstairs of the residence. He ran up the stairs, encountered Appellant in the middle bedroom, and observed a box of Remington ammunition. Detective McDermott then secured the premises and obtained a search warrant for the residence. The search of the residence yielded, "one box of Remington .9-millimeter bullets, 25 total[;] [] one copper projectile; four loose .45 caliber rounds; one black extended pistol magazine; one clear sandwich baggie with four smaller baggies with numerous packets of an off white chunky substance; and . . . $495[.00] U[nited] S[tates] currency."

On August 2, 2010, the Commonwealth filed a criminal information charging Appellant with the aforementioned offenses as well as simple assault, recklessly endangering another person (REAP), and first degree murder. On September 19, 2012, Appellant filed an omnibus pretrial motion seeking suppression of evidence based on, *inter alia*, an illegal search conducted without a warrant or probable cause. The trial court held a hearing on Appellant's motion on October 1, 2012, and at the conclusion of the hearing, denied Appellant's motion. On October 2, 2012, Appellant and codefendant Verdier proceeded to a jury trial. On October 12, 2012, the jury convicted Appellant of third-degree murder, criminal attempt to commit murder, criminal conspiracy, firearms not to be carried without a license, PIC, and aggravated assaults. The charges of simple assault and REAP were *nolle prossed*.

On December 19, 2012, the trial court imposed an aggregate sentence of 17½ to 60 years' imprisonment. On December 27, 2012, Appellant filed a timely post-sentence motion. The motion was denied by operation of law on April 29, 2013.

*Commonwealth v. Cooper*, No. 1268 EDA 2013, at *1-6 (Pa. Super. filed August 28, 2015) (unpublished memorandum) (internal citations and footnotes omitted). The judgment of sentence was affirmed. *See id*. Our Supreme Court then denied further review. *See Commonwealth v. Cooper*, No. 576 EAL 2015 (Pa. 2016).

- 3 -

Appellant filed a PCRA petition (his first) on November 16, 2016, and after the appointment of counsel, a supplemented petition was filed on July 3, 2017. Counsel was permitted to withdraw on September 11, 2017, and a new attorney was appointed the same day. While the proceedings were still pending, the replacement attorney passed away, and on March 5, 2019, a new attorney was appointed to represent Appellant.

An amended petition was filed on April 26, 2019, and the Commonwealth moved to dismiss it on July 30, 2019. On March 2, 2021, the Commonwealth disclosed to Appellant that a prosecutor in his case had received a letter on September 17, 2012, from Warren's trial counsel which suggested that, at his re-sentencing, the sentencing judge would be more lenient on Warren if his testimony at Appellant and Verdier's joint trial were to incriminate those two co-defendants.

A new counseled amended petition was filed on April 10, 2021, and Appellant filed a letter brief on May 30, 2022, supplementing the latter filing on November 23, 2022. The Commonwealth filed an answer on October 21, 2023, and an additional letter brief was filed by PCRA counsel on January 23, 2024.

An evidentiary hearing was held on March 28, 2024. A central issue developed at the hearing concerned the new testimony of Appellant's co-defendant, Nutta Verdier, who admitted his own guilt in the drive-by shooting while denying Appellant's involvement. Appellant also testified on his own

behalf. The other issue developed at the evidentiary hearing concerned the failure of Appellant's trial counsel to seek a "corrupt and polluted source" jury instruction as to the testifying witness, Darrell Cobb, who was the alleged target of the drive-by shooting.

The PCRA court dismissed Appellant's petition on April 29, 2024. Appellant timely appealed, raising four issues in his brief:

> 1. Did the PCRA court err and was dismissal of Appellant's PCRA Petition not supported by the Record and free from legal error because trial counsel was ineffective and Appellant suffered prejudice because trial counsel did not request a ["]corrupt and polluted source["] charge in relation to witness Darrell Cobb?
>
> 2. Did the PCRA court err and was dismissal of Appellant's PCRA Petition not supported by the Record and free from legal error because trial counsel was ineffective and Appellant suffered prejudice because trial counsel did not object to multiple **Bruton v. United States** violations at trial?
>
> 3. Did the PCRA court err and was dismissal of Appellant's PCRA Petition not supported by the Record and free from legal error because trial counsel was ineffective and Appellant suffered prejudice because trial counsel did not object or seek a mistrial or raise the issue of prosecutorial misconduct in relation to discovery violations and tacit agreements regarding preferential treatment for witness Jacque Warren and there was newly-discovered evidence as to same and associated police misconduct that Appellant was not permitted to explore at the evidentiary hearing?
>
> 4. Did the PCRA court err and was dismissal of Appellant's PCRA Petition not supported by the Record and free from legal error because the PCRA court denied relief following the testimony of Nutta Verdier who testified credibly as to Appellant's non-involvement in the underlying crimes?

Appellant's Brief, at 4.[1]

Appellant's first claim is that his trial counsel was ineffective in failing to request a "corrupt and polluted source" instruction with respect to the witness, Darrell Cobb. He argues that trial counsel should have demanded this instruction because, at the time of trial, Cobb himself had an open criminal case in another criminal matter, making him more inclined to testify favorably for the prosecution; Appellant also argued that the prosecution's decision not to charge Cobb in the underlying case allowed for the inference that Cobb had cut a deal with the prosecution to implicate Appellant in exchange for leniency in Cobb's own case.

On review of an order dismissing a petition for postconviction relief, this Court "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019). Consistent with that standard, this Court is bound by the PCRA court's credibility determinations as long as they are supported by the record. *See id*. However, the PCRA court's legal conclusions are subject to a *de novo* standard of review. *See id*.

A petitioner seeking relief under the Post Conviction Relief Act (PCRA) 42 Pa.C.S.A. §§ 9541-9546, must show that the claims raised have not been

---

[1] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925. *See* PCRA Court 1925(a) Opinion, 6/10/2024, at 6-17.

previously litigated. **See** 42 Pa.C.S.A. § 9544. A claim is previously litigated if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. **See Commonwealth v. Reid**, 235 A.3d 1124, 1144 (Pa. 2020). Claims that have been previously and fully litigated are procedurally barred. **See** 42 Pa.C.S.A. § 9544.

For the purposes of the PCRA, counsel is presumed to have been effective. **See Commonwealth v. Sepulveda**, 55 A.3d 1108, 1117 (Pa. 2012). A PCRA petitioner has the burden of proving by a preponderance of the evidence all three prongs of an ineffectiveness claim:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

**Id**. (citing **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987)). A claim has arguable merit for the purposes of the PCRA "where the factual averments, if accurate, could establish cause for relief." **Commonwealth v. King**, 57 A.3d 607, 613 (Pa. 2012) (quoting **Commonwealth v. Sandusky**, 203 A.3d 1033, 1043-44 (Pa. Super. 2019)). Counsel cannot be found ineffective for failing to raise a claim that is meritless. **See Sepulveda**, 55 A.3d at 1117.

"A 'corrupt and polluted source' instruction advises the jury that if it finds that a certain witness who testified against the defendant was an accomplice of the defendant in a crime for which he is being tried, then the jury should deem that witness a 'corrupt and polluted source' whose testimony

should be viewed with caution." ***Commonwealth v. Collins***, 957 A.2d 237, 262 (Pa. 2008) (citing ***Commonwealth v. (Roy) Williams***, 732 A.2d 1167, 1181 (Pa. 1999)). The instruction is meant to address cases in which one accomplice testifies against the other in exchange for favorable treatment by the prosecution. ***See Commonwealth v. Smith***, 17 A.3d 873, 906 (Pa. 2011).

The instruction is appropriate only where there is sufficient evidence to present a jury question with respect to whether the witness is indeed the defendant's accomplice to a crime. ***See Collins***, 957 A.2d at 262. Under 18 Pa.C.S.A. § 306(c), a person may qualify as a liable accomplice of another person in the commission of an offense if:

> (1) with the intent of promoting or facilitating the commission of the offense, he (i) solicits such other person to commit it; or (ii) aids or agrees or attempts to aid such other person in planning or committing it; or (2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S.A. § 306(c).

Here, Appellant's ineffectiveness claim has no merit because he failed to present any evidence to justify the giving of a corrupt and polluted source instruction as to the Commonwealth's trial witness (and the alleged victim), Cobb. There was no evidence from which it could reasonably be inferred that Cobb was an accomplice of Appellant and the other individuals who were shooting at Cobb on the date in question. As the PCRA court correctly notes, the evidence presented at trial only showed that Cobb was an intended *victim* of Appellant, Nutta Verdier, and Warren. The fact that Cobb returned fire

against those individuals in self-defense could not have rendered him an accomplice to Appellant's criminal acts. *See e.g., Commonwealth v. Williams*, 732 A.2d 1167, 1181-82 (Pa. 1999) (accomplice liability charge was not warranted where there was no evidence from which jury could reasonably have inferred that witness was accomplice, such that counsel was not ineffective for not requesting such instruction); *Commonwealth v. Fisher*, 741 A.2d 1234, 1246 (Pa. 1999) (same); *Commonwealth v. Hall*, 867 A.2d 619, 631 (Pa. Super. 2005) (same). Thus, Appellant's trial counsel could not have been ineffective in failing to request such an instruction as to Cobb, as that underlying ground for relief has no arguable merit.

Appellant's second claim, as described in his 1925(b) statement, is that his trial counsel was ineffective in failing to object to the admission of portions of Warren's testimony which violated his Six Amendment rights under *Bruton v. United States*, 391 U.S. 123 (1968).[2]

---

[2] In his brief, Appellant alludes to different parts of Warren's testimony as violative of *Bruton*, or more generally, the right to confrontation; Appellant also argues that some of Warren's statements were inadmissible hearsay, and that much of his testimony was erroneously prompted by the prosecution. *See* Appellant's Brief, at 15-16. Appellant contends further, within the same issue in his brief, that his trial counsel objected to the admission of some, but not all, of this evidence, *see id.*, and that appellate counsel was ineffective for failing to raise on appeal the evidentiary issues preserved by timely objections, *see id.*, at 17. This is an apparent departure from Appellant's 1925(b) statement, in which he only raised claims based on trial counsel's ineffectiveness in failing to object to portions of Warren's testimony which violated *Bruton*. *See* Appellant's 1925(b) Statement, 5/1/2024, at para. 2. Since our review must be limited to the grounds for relief enumerated in the
*(Footnote Continued Next Page)*

- 9 -

In ***Bruton***, the United States Supreme Court examined whether a defendant's constitutional right to confrontation was violated when, at a joint trial, his non-testifying co-defendant's confession was introduced against him; a related issue was whether an instruction directing the jury to consider the confession as evidence of only the co-defendant's guilt, and not the defendant's, would cure such a violation. ***See Bruton***, 391 U.S., at 126. The ***Bruton*** Court held that the introduction of the non-testifying co-defendant's confession describing the defendant's participation in the crime had violated the defendant's right of confrontation, and the error could not be cured by an instruction. ***See id***.

In the present case, the PCRA court correctly found that ***Bruton*** was inapplicable at Appellant's trial because Warren was a testifying witness who was not a co-defendant. ***See*** PCRA Court 1925(a) Opinion, 6/10/2024, at 8-10. Since Warren was subject to cross-examination at Appellant's trial, his right to confront the evidence against him was not violated for the purposes of ***Bruton***. Thus, Appellant's trial counsel could not have been ineffective in failing to object, or to seek an instruction to cure a ***Bruton*** violation, because no such violation occurred in the manner that Appellant has described. ***See e.g., Commonwealth v. Housman***, 986 A.2d 822, 835-36 (Pa. 2009) ("The ***Bruton*** rule applies solely to non-testifying co-defendants," and is not

_____

1925(b) statement, any additional claims may not be considered on the merits at this juncture. ***See*** Pa.R.A.P. 1925(b)(4)(vii).

applicable where a witness testified at trial and subjected herself to cross-examination).

Appellant's third claim is essentially that he was entitled to relief on his claim that the Commonwealth violated the mandate of ***Brady v. Maryland***, 373 U.S. 83 (1963), which compels the prosecution to timely disclose evidence favorable to the defense.[3]   Specifically, Appellant claims that the prosecution did not disclose to him until 2021 that, at the time of Appellant's trial, Warren had negotiated to receive a more lenient sentence in his own case in exchange for testifying against Appellant.   According to Appellant, this purported agreement conflicted with the trial testimony of Warren, as well as the testimony of assigned detectives on the case, who insisted that Warren was receiving no such benefit for his testimony.   A related sub-issue is that the PCRA court erred in preventing Appellant from developing his ***Brady*** claim at the evidentiary hearing.

A ***Brady*** claim has three elements: "(1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." ***Commonwealth v. Carson***, 913 A.2d 220, 244 (Pa. 2006).   Prejudice in this

---

[3] Appellant has framed this issue as implicating the ineffectiveness of trial counsel.  But in substance, Appellant only contends that the Commonwealth's conduct prevented trial counsel from learning about the purported agreement between Warren and the prosecution, ***see*** Appellant's Brief, at 17-29, in which case counsel could not have been ineffective on that ground.  The issue of ineffectiveness was not developed in Appellant's brief in his discussion of the alleged ***Brady*** violation.  ***See id***.

- 11 -

context means a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ***Commonwealth v. Clark***, 961 A.2d 80, 89 (Pa. 2008) (quoting ***Commonwealth v. Burke***, 781 A.2d 1136, 1141 (Pa. 2001)).

A PCRA petitioner may assert a ***Brady*** violation during postconviction proceedings as long as the claim is not time-barred, as such constitutional rights may be vindicated at the postconviction stage. ***See generally Commonwealth v. Cox***, 146 A.3d 221 (Pa. 2016) (citing 42 Pa.C.S.A. § 9543(a)(2)(i), (ii)). For ***Brady*** claims asserted long after the judgment of sentence has been entered, it is common for PCRA petitioners to attempt to establish their timeliness by satisfying two exceptions to the PCRA's jurisdictional time-bar. The first is that the claim arose from a new fact which could not have been discovered sooner through the exercise of due diligence; the second is that the delay in asserting the claim resulted from governmental interference. ***See generally Commonwealth v. Natividad***, 200 A.3d 11, 26-27 (Pa. 2019) (citing 42 Pa.C.S.A. § 9545(b)(2) (enumerating the newly-discovered fact and the governmental interference timeliness exceptions).

In the present case, on March 2, 2021, the Commonwealth disclosed to Appellant purported ***Brady*** material. The record shows that, on September 17, 2012, Warren's trial counsel (William L. Bowe, Esq.) had sent a prosecutor (ADA Deborah Watson Stokes) a letter regarding Warren's upcoming re-sentencing on October 1, 2012. The letter purports to remind the prosecutor that Judge Jeffrey Minehart had "indicated that he would look favorably on a

re-sentencing motion on behalf of Mr. Warren if he were to cooperate in the trial of [Appellant] and Mr. Verdier. Their trial is scheduled for October 1, 2012. Mr. Warren's [original] sentence was vacated on my motion." Appellant's Supplemental PCRA Petition and Memorandum of Law, 4/10/2021, at Exhibit A. The letter concludes by informing the prosecutor that Warren had agreed to testify against Appellant and Verdier. *See id*.

We find that no relief is due on this ***Brady*** claim. As the PCRA court noted:

> The partes were all aware that Warren was going to testify at trial, and that while he hoped for leniency in his own sentence for his cooperation, he was not guaranteed anything in return for his testimony. Further, defense counsel for both co-defendants thoroughly cross-examined Warren regarding any motives he might have for testifying and argued that Warren's testimony should be discredited for various reasons in both their opening and closing statements.

PCRA Court 1925(a) Opinion, 6/10/2024, at 14.

The crux of the PCRA court's reasoning is that, while the letter from Warren's attorney was itself newly disclosed, its content did not reveal any new information or insight into Warren's motive for testifying against Appellant. Indeed, Appellant's co-defendant, Verdier, made an *identical* ***Brady*** claim in his own PCRA petitions, having learned of the same evidence at the time that Appellant did.

This Court affirmed the denial of the ***Brady*** claim in Verdier's case, finding that the elements of the claim had not been met, and that the PCRA court did not abuse its discretion in dismissing the claim:

- 13 -

[Verdier] fails to establish that the Commonwealth and Warren had any agreement. **The letter from Attorney Bowe indicates that Judge Minehart might "look favorably" upon Warren's cooperation at his resentencing hearing, a fact which was known and analyzed at length during his testimony**. The letter does not indicate that there was a definite agreement between the Commonwealth and Warren, and merely indicates the possibility of a more favorable sentence should he cooperate with the Commonwealth. **Ultimately, the decision on how to resentence Warren rested solely in the purview of Judge Minehart, whose decision was not reduced to a contractual certainty**. Ultimately, On October 26, 2012, Judge Minehart resentenced Warren to twelve and a half to twenty-years imprisonment on the charge of Third-Degree Murder, and imposed a consecutive ten years of reporting probation for Conspiracy.

*Commonwealth v. Verdier*, 272 A.3d 470 (Pa. Super. filed January 11, 2022) (unpublished memorandum) (emphases added; internal citations and footnotes omitted).

Further, this Court also had stressed in Verdier's earlier PCRA appeal that both Verdier and Appellant must have known at the time of their trial that Warren was testifying against them in order to curry favor with the Commonwealth:

Our review of the transcripts has not revealed an explicit admission that Warren had an agreement with the Commonwealth. Warren himself repeatedly denied that he had any form of deal with the Commonwealth, while admitting that he was hoping that his sentence would be reduced. *See, e.g.*, N.T. Jury Trial, 10/9/12, at 57-58. **Given the arguments of the parties and statements of the trial court in the transcript before us, it is clear that Warren was, to some extent, cooperating with the district attorney's office and had some expectation that his previously vacated sentence could be reduced upon re-sentencing if he curried favor with the district attorney**.

- 14 -

***Commonwealth v. Verdier***, 2910 EDA 2016, at n.6 (Pa. Super. filed
September 11, 2017) (unpublished memorandum) (emphasis added). This
Court held that, based on that prior litigation, Verdier's **Brady** claim was
barred under the PCRA because it had already been fully litigated. **See id**.

In the present case, we adopt the reasoning of both the PCRA court, and
from our prior dispositions in Verdier's case, as that rationale is directly
applicable here. The record is identical as to the joint trial of Appellant and
his co-defendant, Verdier. In both cases, there has been no showing that the
Commonwealth withheld the underlying fact that Warren was testifying in
order to curry favor with the prosecution and the sentencing judge. The letter
that Warren's counsel sent to a prosecutor concerned the fact that the
sentencing judge would "look favorably" on Warren's testimony against
Appellant, but this did not establish an agreement. Both Appellant, and his
co-defendant, Verdier, were well-aware of Warren's motive to testify at the
time of trial, and Warren was thoroughly cross-examined on that basis.

In sum, the PCRA court's dismissal of Appellant's **Brady** claim must be
upheld because Appellant failed to show that the Commonwealth withheld an
agreement between Warren and the prosecution, or that Appellant could have
been prejudiced as a result of a non-disclosure concerning such an agreement.
Moreover, as we held in Verdier's PCRA appeal, the issue already has been
fully litigated at the joint trial of Appellant and Verdier, barring reconsideration
of the issue in postconviction proceedings.

With respect to Appellant's related sub-issue – the PCRA court's decision to dismiss the **Brady** claim without allowing Appellant to develop it further at the evidentiary hearing – we find that this claim too is meritless.

"It is well settled that [t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Maddrey**, 205 A.3d 323, 328 (Pa. Super. 2019) (internal quotations omitted). Where a petitioner seeks the reversal of a PCRA court's decision to dismiss a petition without a hearing, he must show that "he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." **Maddrey**, 205 A.3d at 328 (quoting **Commonwealth v. Hanible**, 30 A.3d 426, 452 (Pa. 2011)). The PCRA court's decision to dispense with an evidentiary hearing on an issue is subject to an abuse of discretion standard of review. **See Hanible**, 30 A.3d at 452-53.

In this case, Appellant did not raise a genuine issue of that would entitle him to relief if resolved in his favor. As discussed above, his **Brady** claim was based on a letter sent by Warren's counsel to a prosecutor concerning that witness's understanding that the sentencing judge might be lenient if he were to testify against Appellant. But during the trial, the parties all understood why Warren was taking the stand, and what he stood to gain. That issue was thoroughly litigated, and it did not warrant further inquiry in Appellant's most recent PCRA proceedings. Thus, the PCRA court did not abuse its discretion

in denying an evidentiary hearing on this issue, as the claim was barred, already developed, and ultimately unavailing on the merits.

Appellant's fourth and final claim is that the PCRA court abused its discretion in denying postconviction relief based on the testimony of his co-defendant, Nutta Verdier, who testified at the PCRA hearing that only he and Warren had perpetrated the shooting, and that Appellant had not taken part in it. Appellant contends that Verdier's testimony was after-discovered evidence which entitles him to a new trial.

Under the PCRA, a claim of after-discovered evidence is a substantive ground for relief. *See Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citing 42 Pa.C.S.A. § 9543(a)(2)(vi)). To assert such a claim, the petitioner must plead and prove "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). Moreover, the petitioner must also prove that the evidence could not have been obtained prior to trial through the exercise of due diligence; the evidence is not cumulative; and the evidence is not being used solely for impeachment purposes. *See Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017).

At an evidentiary hearing, the PCRA court is the factfinder who has the role of assigning weight to witness testimony and determine its credibility. *See Commonwealth v. Miller*, 212 A.3d 1114, 1123 (Pa. Super. 2019) (quoting *Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013)). In that

role, the PCRA court is free to believe all, part or none of such testimonial evidence. *See Commonwealth v. Mitchell*, 105 A.3d 1257, 1277 (Pa. 2014). Inconsistencies in a witness's testimony, and a witness's motive to testify, are matters that ultimately bear on the credibility of that witness. *See id*.; *see also Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004) (same).

An appellate court may not re-weigh the evidence or substitute its judgment for that of the factfinder. *See id*.; *see also Commonwealth v. Devries*, 112 A.3d 663, 667 (Pa. Super. 2015). A PCRA court's assignment of weight to witness testimony is binding on the reviewing court as long as that determination is supported by the record. *See Mitchell*, 105 A.3d at 1077.

In the present case, Appellant testified on his own behalf at an evidentiary hearing before the PCRA court; he also presented the testimony of his co-defendant at trial, Verdier, who was found guilty of taking part in the same underlying incident, making him Appellant's accomplice. *See generally Commonwealth v. Verdier*, No. 2910 EDA 2016 (Pa. Super. filed December 19, 2012) (unpublished memorandum). Verdier gave testimony, which if fully believed, would have exonerated Appellant of the offenses of which the jury found him guilty. However, the PCRA court declined to credit Verdier's testimony for a number of reasons which are supported by the record.

In its 1925(a) opinion, the PCRA court found that Verdier's account of the subject incident differed from his consistent position in the preceding 13

- 18 -

years that he was innocent of the subject crimes. *See* PCRA 1925(a) Opinion, 6/10/2024, at 16-17. Verdier had proclaimed his innocence at trial, as well as direct appeal, postconviction proceedings, and federal *habeas* proceedings. None of those efforts were availing. Accordingly, Verdier only abandoned his assertions of innocence after all potential means of post-verdict relief had been exhausted, diminishing the weight of his new testimony, which was no longer against Verdier's own penal interest, making it less reliable. *See id*.

Further, Verdier's testimony at the evidentiary hearing was inconsistent with the evidence presented at trial which linked Appellant to the attempted murder of Cobb, and the death and injury of two innocent bystanders. The PCRA court therefore found Verdier not to be credible because his testimony at the evidentiary hearing conflicted with his prior claims, and he no longer had anything to lose by implicating himself for Appellant's advantage. *See id*. As those credibility determinations are supported by the record, they are binding on this Court, and we cannot find that the PCRA court abused its discretion in dismissing Appellant's claim of after-discovered evidence. Thus, the PCRA court did not err in denying relief as to any of Appellant's claims, and the order of dismissal must be upheld.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/7/2025